NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2990
_____

IN RE:  AVANDIA MARKETING SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

*Law Office of Steven M. Johnson PC & Avandia Clients,
Appellants

*(Pursuant to Rule 12(a) Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-07-md-01871)
Honorable Cynthia M. Rufe, District Judge
_____

Argued June 13, 2016

BEFORE:  AMBRO, JORDAN, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: July 27, 2016)

Louis B. Kupperman, Esquire
Mathieu Shapiro, Esquire (Argued)
Obermayer Rebmann Maxwell & Hippel
1617 John F. Kennedy Boulevard
One Penn Center, 19th Floor
Philadelphia, PA 19103

        <u>Attorneys for Appellants</u>
_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Vance R. Andrus, Esquire
Andrus Wagstaff
7171 West Alaska Drive
Lakewood, CO 80226

Bryan F. Aylstock, Esquire
Aylstock Witkin Kreis & Overholtz
17 East Main Street
Suite 200
Pensacola, FL 32502

Dianne M. Nast, Esquire
Erin C. Burns, Esquire
NastLaw
1101 Market Street
Suite 2801
Philadelphia, PA 19107

Thomas P. Cartmell, Esquire
Wagstaff & Cartmell
4740 Grand Avenue
Suite 300
Kansas City, MO 64112

Joseph J. Zonies, Esquire
Sean Connelly, Esquire (Argued)
Zonies Law
1900 Wazee Street
Suite 203
Denver, CO 80202

Stephen A. Corr, Esquire
Begley Carlin & Mandio
680 Middletown Boulevard
P.O. Box 308
Langhorne, PA 19047

<u>Attorneys for Appellee</u>

_____

OPINION*
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.


I.  INTRODUCTION

This matter comes on before this Court on an appeal from a final order of the

District Court dealing with an assessment against monetary recoveries made in

settlements of underlying Illinois state-court actions.  The underlying actions involved

numerous plaintiffs who sued in Illinois state court in actions comparable to those that

plaintiffs brought in district court litigation consolidated in a multi-district litigation

("MDL") in the Eastern District of Pennsylvania.  Both the state and district court

litigation concerned the effects of Avandia, a drug developed and marketed by the

defendant, GlaxoSmithKline ("GSK").  Following a settlement in the Illinois state-court

cases, the plaintiffs' attorneys leading the MDL sought an order requiring the

withholding of seven percent of the proceeds of the state-court settlements, which the

plaintiffs' attorneys contended was required by an order entered in the MDL.  The MDL

Court had provided for the withholding to compensate and reimburse the plaintiffs'

attorneys who completed work for the common benefit of all plaintiffs pursuing

comparable claims against GSK.

_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Lead counsel for the Illinois state-court plaintiffs contended that the District Court did not have jurisdiction over the Illinois proceedings, so he objected to the assessment. But the Court rejected this argument, as it determined that it had jurisdiction and that the seven-percent assessment was warranted. Accordingly, it issued an order on July 21, 2015, to that effect. Counsel and the plaintiffs from the Illinois cases now appeal from that order, contending that the Court did not have jurisdiction to enter the order.

The specific question that we address is whether the MDL pretrial order entered in the District Court establishing a common benefit fund for plaintiffs' attorneys working for the common benefit of all similarly situated plaintiffs includes assessments from proceeds recovered in the Illinois cases if attorneys participating with lead counsel in the Illinois cases obtained discovery materials gathered and created by MDL common benefit counsel and consented to the proceeds from the Illinois cases being contributed to the fund. We conclude that the Court did not exceed its jurisdiction in resolving the issue and did not err in finding that the seven-percent assessment was warranted. Consequently, we will affirm its order of July 21, 2015.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Avandia MDL

On October 16, 2007, the United States Judicial Panel on Multidistrict Litigation created MDL No. 1871, In re Avandia Marketing, Sales Practices and Products Liability Litigation (the "Avandia MDL"), in the Eastern District of Pennsylvania, where it has remained. In doing so, the Panel acted in accordance with its authority under 28 U.S.C.

4

§ 1407(a), which permits the transfer of civil actions "pending in different districts" to a single federal district for coordinated or consolidated pretrial proceedings. The Avandia MDL consolidated all product liability cases arising from the development and marketing of the drug Avandia. In a majority of the cases, the plaintiffs included an allegation that Avandia, a prescription drug intended to treat type-two diabetes, increased the risk of heart failure among its users.

In accordance with its MDL responsibilities, the District Court created a Plaintiffs' Steering Committee ("PSC") in the Avandia MDL. The PSC spent years conducting fact and expert discovery and participating in extensive pretrial motion practice. The PSC has been succeeded by a Plaintiffs' Advisory Committee ("PAC") in the Avandia MDL, and the PAC is effectively the appellee in the appeal.[1] On August 26, 2009, the Court entered Pretrial Order 70 ("PTO 70"), the application of which is at this heart of this appeal. PTO 70 established the Avandia Common Benefit Fund (the "Fund") as a means through which to "compensate and reimburse attorneys for services performed and expenses incurred for MDL administration and common benefit." (A288). There was a voluntary Attorney Participation Agreement (the "Participation Agreement") that was attached as an exhibit to PTO 70. It was considered a "private and cooperative agreement" between the PSC and other plaintiffs' attorneys. (A291, ¶ 2).

---

[1] In early 2012, after the settlement of thousands of claims, the District Court terminated the PSC and created the PAC "to ensure that a small number of PSC members with valuable historical knowledge about the MDL would remain available to serve the litigation, in a limited, advisory capacity, after settling their claims." (A5 n.1). The PAC is participating in this appeal seeking to uphold the rulings of the District Court.

5

PTO 70 defined "Participating Counsel" to include: "(1) all members of the PSC and (2) any other plaintiffs' attorneys who sign on to the Participation Agreement." (Id.). It further explained that "Participating Counsel are entitled to receive the MDL common benefit work product and the state court work product of those attorneys who have also signed the Participation Agreement and shall be entitled to seek disbursements as Eligible Counsel" in accordance with PTO 70. (Id.). In return for receipt of the common benefit work product, "Participating Counsel agree[d] to pay the assessment amount [set forth in PTO 70] on all filed and unfiled cases or claims in state or federal court in which they share a fee interest." (Id.). The assessment amount was defined as "seven percent (7%) of the Gross Monetary Recovery" for all "Covered Claims." (A293, ¶ 4(b)). "Covered Claims" were defined as follows:

> (a) All Avandia claims now or hereafter subject to the jurisdiction of MDL 1871, whether disposed of before or after remand regardless of whether counsel holding a fee interest in such Avandia claims in such cases have signed the Participation Agreement; [and]

> (b) All Avandia claims, regardless of whether those claims are subject to the jurisdiction of MDL 1871, tolled, unfiled, or filed in another jurisdiction, in which the following attorneys have a fee interest, including but not limited to:

>> (i) Protective Order: Those attorneys who executed the Endorsement of Protective Order, attached to Pretrial Order 10 [("PTO 10")], and

>> (ii) Participating Counsel: Members of the PSC and plaintiffs' attorneys who sign on to the Participation Agreement[.]

(A292, ¶ 3).

6

Thus, PTO 70 set forth that once counsel signed the Participation Agreement or the Protective Order, PTO 10, to which the definition of a covered claim in PTO 70 made reference, all Avandia claims in which that counsel had a financial interest—whether those claims are filed in state or federal court—would fall within the ambit of PTO 70 and be subject to the seven-percent common benefit fund assessment. PTO 10 concerned confidential information, which it defined, and limited the disclosure of confidential discovery material to specifically enumerated situations. (See A270-84).

B. The Johnson Firm Cases[2]

In 2009, the Law Offices of Steven M. Johnson, P.C. (the "Johnson Firm") filed a multi-plaintiff lawsuit in an Illinois state court titled Gabel v. GlaxoSmithKline. In the spring of 2012, while Gabel was pending, Steven Johnson ("Johnson") of that firm attended an Avandia Litigation Conference led by Paul Kiesel, then coordinating counsel for the Avandia MDL. The purpose of the conference was to distribute MDL work product dubbed "trial in a box" to attorneys who still were litigating Avandia cases. The work product—which included, among other things, expert reports on causation and liability, access to experts, transcripts, demonstratives from Daubert[3] hearings, a database of indexed documents, deposition transcripts, model in limine motions, and model oppositions to defense in limine motions—was compiled following the settlement of thousands of MDL cases.

---

[2] The following facts are the findings of the District Court, which followed an evidentiary hearing on April 22, 2015. We review these findings for clear error, which we do not find. See CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008).

[3] Daubert v. Merrell Dow Pharm., 509 U.S. 579, 113 S.Ct. 2786 (1993).

7

During the conference, Johnson met Michael Baum ("Baum") of the firm Baum, Hedlund, Aristei & Goldman (the "Baum Firm") and Erick Rosemond ("Rosemond") of The Rosemond Law Group, P.C. (the "Rosemond Firm"). Both Baum and Rosemond had cases in the MDL, had signed the PTO 10 Protective Order and the PTO 70 Participation Agreement, and had performed common benefit work for the MDL. Thus, PTO 70 bound Baum and Rosemond to pay the seven-percent common benefit fund assessment for all cases in which they shared a fee interest. Johnson, who was aware of Baum's and Rosemond's obligations under PTO 70, asked them to serve as trial counsel in Gabel. Thereafter, both Baum and Rosemond entered appearances and obtained pro hac vice admittance in Illinois state court as counsel for the Gabel plaintiffs.

With respect to the fee-sharing arrangements among the attorneys involved in the Gabel case, the District Court, following a hearing that we discuss below, found that email communications between Baum and Johnson "made it clear" that counsel planned "to use the MDL trial in a box and other work product, and indicated that trial counsel's fees would be calculated on the balance of the fees remaining after subtracting the debt owed to the [PAC] for the use of the MDL work product."[4] (A7).

According to Baum, when he started participating in the Gabel case, he immediately reviewed Johnson's inventory of cases to determine which cases could be bellwether cases and began to prepare for trial. "He further testified that he explained to

[4] Baum and Rosemond testified at the hearing in the District Court and presented evidentiary exhibits, including emails that they exchanged with Johnson. Johnson did not testify because he contended that the Court did not have jurisdiction to hold the hearing. Nevertheless, he appeared through counsel solely to oppose the Court's exercise of jurisdiction.

8

Johnson, in an email, that because they were relying upon MDL work product, the cases in the Gabel case would be subject to the common benefit fund assessment, although they could discuss the possibility of a set-off or reduction of the assessment required by PTO 70 with the MDL PAC." (A8). In late 2012, while Baum and Rosemond continued to prepare for trial, the Johnson Firm began negotiating a master settlement agreement with GSK, and by December 2012, the parties had reached a global settlement agreement in principle for the Illinois cases.[5]

C. The Order to Show Cause

In the wake of the Gabel settlement, the Illinois state court entered an order that required GSK to hold seven percent of the Gabel settlement funds in reserve, pending resolution of any issues regarding the MDL common benefit fund obligations pursuant to PTO 70.[6] The Illinois state court then scheduled a hearing at which it intended to determine whether Johnson and the Gabel plaintiffs were obligated to pay the common benefit fund assessment to the Fund. But when the PAC learned about the scheduled hearing, it moved before the District Court for an Order to Show Cause why the MDL Court—instead of the Illinois state court—should not interpret PTO 70 and determine whether a common benefit assessment was due.[7] In response, Baum and Rosemond filed

---

[5] The details of this settlement agreement were not finalized until sometime later and are not included in full in the record before us.

[6] Pursuant to this state-court order, the funds are currently held in an attorney trust account in Philadelphia.

[7] The PAC also sought an injunction under the All Writs Act, in which it asked the District Court to enjoin the Illinois state court from holding the hearing and addressing the issue. (A182, 7:2-8).

9

declarations in which they stated that they and their respective firms did not dispute their obligations to pay an assessment from the Gabel settlement. In addition, the Illinois local counsel on the plaintiffs' Gabel team—Robert G. Jones, David R. Jones, and the Jones Law Firm, P.C.—likewise filed a declaration in which they stated that they did not oppose payment of the common benefit fund assessment. The Johnson Firm, on the other hand, challenged the Court's jurisdiction to enter an assessment order with respect to the Gabel litigants. Specifically, the Johnson Firm argued that the Court lacked subject-matter jurisdiction to issue PTO 70, insomuch as PTO 70 purports to reach purely state-court actions. Further, the Johnson Firm challenged the Court's personal jurisdiction to enforce PTO 70 against the Gabel settlement.

Following a hearing on April 22, 2015, at which both Rosemond and Baum testified and fourteen exhibits were admitted into evidence, the District Court issued an Order and Memorandum Opinion. In that opinion, dated July 21, 2015, the Court held that it had jurisdiction to interpret PTO 70 and determine whether a seven-percent common benefit fund assessment was due as a result of the settlement of the Gabel claims. Specifically, the Court concluded that "[t]he Johnson Firm implicitly entered into a contract with the MDL [PSC], agreeing to be bound by the terms of the Attorney Participation Agreement and PTO 70 in exchange for access to MDL work product[.]" (A2). The Court further held, on the merits, that, in accordance with PTO 70, the seven-percent assessment was due for all settled claims in Gabel. On August 18, 2015, the Johnson Firm and its clients in the Gabel cases appealed.

10

III.     STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The question of whether the District Court had jurisdiction is the central issue presently on appeal, and we will resolve it below.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the Court's jurisdictional analysis.  See Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 n.7 (3d Cir. 2015).  We review the Court's factual findings for clear error, CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008), and review its fee determination for abuse of discretion, "which can occur if the judge fails to apply the proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous," In re Diet Drugs Prod. Liab. Litig., 582 F.3d 524, 538 (3d Cir. 2009) (internal quotation marks omitted).

IV.     DISCUSSION

On July 2, 2015, we addressed the subject-matter jurisdiction issue now before us when addressing a different law firm's challenge to the seven-percent assessment in the same MDL currently before us.  See In re Avandia, 617 F. App'x 136 (3d Cir. 2015), cert. denied, 136 S.Ct. 1167 (2016) ("Avandia I").  Avandia I involved the Girardi Keese Law Firm ("Girardi Keese"), which represented thousands of individuals in actions against GSK, primarily in California state court.  Id. at 137.  Unlike the Johnson Firm, which represented plaintiffs only in state court, Girardi Keese represented some federal plaintiffs whose cases were consolidated in the MDL for pretrial purposes.  See id. at 139.  As a result of the cases that were consolidated in the MDL, an attorney from Girardi Keese signed an attorney participation agreement in May 2009.  Id. at 138.

11

In <u>Avandia I</u> we summarized the pertinent terms of that agreement as follows:

> The Agreement 'incorporate[d] by reference any Order of the Court regarding assessments and incorporate[d] fully [t]herein all defined terms from such Order(s).' The Agreement covered 'each and every claim, case, or action arising from the use of Avandia in which [Girardi Keese] has a financial interest, whether the claim, case, or action is currently filed in state or federal court, or is unfiled, or is on a tolling agreement.' For these covered cases, Girardi Keese agreed to contribute seven percent of the gross recovery to 'the Plaintiff's Litigation Expense Fund'—four percent to come from Girardi Keese's attorneys' fees and three percent to come from the clients' share of the recovery. In exchange for seven percent of the recovery, the Steering Committee promised to provide work product developed by the Steering Committee and to 'cooperate with [Girardi Keese] to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.' Additionally, the Agreement authorized Girardi Keese to 'apply to the Court for common benefit fees and reimbursement of expenses' if 1) the Steering Committee requested assistance; 2) Girardi Keese 'expended time and efforts for the common benefit'; and 3) Girardi Keese submitted an application 'in accordance with the Court's orders, or in the absence of such orders, the procedures established by the [Steering Committee].'

<u>Id.</u> (quoting the attorney participation agreement that Girardi Keese executed).

Shortly after Girardi Keese signed this attorney participation agreement, the District Court, following the PSC's motion, entered PTO 70 with its accompanying Participation Agreement incorporated therein. <u>Id.</u> at 138-39. Importantly, "[t]he Attorney Participation Agreement attached to Pretrial Order 70 as [an exhibit] was materially identical to the Attorney Participation Agreement Girardi Keese signed in May 2009." <u>Id.</u> at 139.

12

While Girardi Keese had thousands of cases in state court and only 25 in the MDL, "Girardi Keese used MDL work product, in the form of expert reports, to oppose GlaxoSmithKline's motions for summary judgment in the California [state] proceedings and indicated to the state court that it would use a variety of MDL materials in a planned trial." Id. But that trial was not held as Girardi Keese settled all of its cases, both those in state court and those in the MDL, in August 2012 before there was a trial. Id. Following the global settlement, GSK indicated to Girardi Keese that it would withhold seven percent of the settlement for each claim pursuant to the attorney participation agreement that Girardi Keese had signed in 2009. Id. Girardi Keese, in turn, contested the applicability of the assessment to the California state-court cases.

Following several rounds of briefing and an evidentiary hearing, the District Court concluded that all of the settled claims were subject to the seven-percent assessment. Id. Girardi Keese appealed, and we affirmed. See id. at 144.

Girardi Keese's primary argument on appeal was that the District Court lacked jurisdiction over the California state-court cases and thus it did not have the authority to impose the seven-percent assessment against those settlements. Id. at 140. "We agree[d] with Girardi Keese that had the District Court simply ordered the firm, as total strangers to the litigation, to contribute to the common benefit fund from the settlement of its clients' state-court cases, it would have exceeded its jurisdiction." Id. at 141. We determined, however, that the Court had not done that. See id. Rather, we concluded that the Court "properly exercise[d] jurisdiction to enforce the contract Girardi Keese made with the [PSC]." Id.

13

In reaching this result, we analyzed as follows:

> A district court that supervises a multidistrict litigation 'has—and is expected to exercise—the ability to craft a plaintiffs' leadership organization to assist with case management.' Included in that ability 'is the power to fashion some way of compensating the attorneys who provide class-wide services.' Here, the District Court issued an order—Pretrial Order 70—dictating how it would allow the leadership organization—the Steering Committee—to be compensated. One way was to assess a percentage of the recovery of the cases before the MDL. The District Court also permitted the Steering Committee to, essentially, trade work product for a share in the recovery in cases *not* before the MDL. The District Court identified a form agreement that the Steering Committee and interested counsel must use to participate in the common benefit scheme and 'incorporated' the agreement into the order.

Id. at 141-42 (quoting In re Diet Drugs Prod. Liab. Litig., 582 F.3d at 547) (emphasis in original).

Against this backdrop, we reasoned that "[w]hen a district court incorporates the terms of an agreement into a court order, 'a breach of the agreement would be a violation of the order.'" Id. at 142 (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381, 114 S.Ct. 1673, 1677 (1994)). In turn, "[b]ecause a district court has jurisdiction to determine whether one of its orders has been violated, it may adjudicate whether an agreement incorporated into a court order has been breached." Id. We determined that, even though Girardi Keese signed its attorney participation agreement prior to the time that the District Court entered PTO 70 with the attached Participation Agreement, the Court's order still incorporated the Girardi Keese attorney participation

14

agreement,[8] and thus, the Court had jurisdiction to determine whether that agreement and the Court's order had been breached, and if so, to remedy that breach. Id. at 142-44.

Based on the above, we concluded as follows:

> This is not, as Girardi Keese argues, finding subject-matter jurisdiction by agreement of the parties. The agreement itself is not the source of the District Court's authority. Rather, the District Court's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel. The agreement was simply incorporated into an order the District Court was empowered to issue. Because it was within the District Court's power to issue an order governing how to compensate the Steering Committee for its work and because Girardi Keese's Attorney Participation Agreement was incorporated into that order, the District Court had jurisdiction to adjudicate whether Girardi Keese breached the Attorney Participation Agreement and thereby violated Pretrial Order 70.

Id. at 143-44 (footnote omitted).

There is no significant factual distinction between the present case and Avandia I in light of the fact that both Baum and Rosemond signed the Protective Order and the Participation Agreement and both were retained as counsel for the Gabel plaintiffs. Though the District Court determined that the Johnson Firm implicitly agreed to PTO 70 through its conduct, we need not determine if it did so because Baum and Rosemond's involvement was sufficient to bring the Gabel cases within the MDL Court's reach.

---

[8] We provided three justifications for this determination. First, the attorney participation agreement that Girardi Keese signed contemplated that the District Court would, in the future, enter an order concerning assessments. Id. at 142. Second, the attorney participation agreement that Girardi Keese signed created continuing obligations, and the agreement's obligations were still in progress at the time that PTO 70 was entered. Id. Finally, the terms of PTO 70 "indicate that the District Court not only incorporated into the order all agreements using the appended form order but also the agreements made that used the same terms." Id. at 142-43.

15

We held in Avandia I that the District Court had the authority to issue PTO 70, and the incorporation of the Participation Agreement into PTO 70 provided jurisdiction to adjudicate whether Girardi Keese breached its attorney participation agreement and thereby violated PTO 70. See id. at 142-44.[9] The same is true with respect to the actions of Baum and Rosemond, both of whom signed the Participation Agreement incorporated into PTO 70 and, accordingly, the District Court reached the correct result.

Appellants argue that the District Court nonetheless erred because it lacked personal jurisdiction over them. Specifically, they contend that they should have received a complaint and a summons rather than an order to show cause. However, the Court's personal jurisdiction over Baum and Rosemond is not in dispute. Because their participation in the state-court litigation triggered the obligation to pay into the Fund, we need not decide whether the Court also had personal jurisdiction over Appellants.[10]

V.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's determination in its order of July 21, 2015 that it had jurisdiction to address the applicability of PTO 70 to the Gabel case, and we likewise will affirm the District Court's conclusion that, pursuant to

---

[9] Though Avandia I is not a precedential opinion, we adopt its reasoning as our own.

[10] We are not concerned in this appeal with the arrangements between Johnson and Baum and Rosemond. Moreover, as we noted in Avandia I, whether counsel "must reimburse its clients for [their] share of the assessment is a question governed by the representation agreement between [the lawyers and their] clients." Id. at 144 n.5.

16

PTO 70, seven percent of the gross monetary recovery of the <u>Gabel</u> settlement is due to the Common Benefit Fund.