**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4161
_____

In re:  AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY
LITIGATION


James E. Mayfield, Sr.; Donnie R. Mayfield; Lawanda A. Mayfield; James Mayfield, Jr.;
Gary Mayfield; Cheryl Mayfield-Alexander; Sandra Mayfield-Parks; Michael Mayfield;
Richard Mayfield; Nicole Mayfield,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-15-cv-04353, 2-07-md-01871)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 12, 2017
Before:  RESTREPO, SCIRICA and FISHER, <u>Circuit</u> <u>Judges</u>


(Opinion filed April 19, 2017)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

The Mayfields appeal pro se from the District Court's order dismissing their complaint with prejudice after they failed to comply with a pretrial discovery order. We will affirm.

I.

Rosie Mayfield died in 2012. According to her family, her death was attributable to complications traceable to long-term use of Avandia, an anti-diabetic medication manufactured by GlaxoSmithKline (GSK). When she died, she was part of a multi-plaintiff action against GSK in Missouri state court. In early 2015, Rosie's spouse, James, and their nine children—the Appellants here—opted out of a master settlement agreement in the Missouri action. The Missouri state court then granted GSK's motion to dismiss that action in September 2015, citing the Mayfields' failure to prosecute. Several months later, in March of 2015, the Mayfields filed a new Avandia-related negligence action against GSK in the Superior Court of Arizona, Maricopa County.[1] GSK removed the action to the United States District Court for the District of Arizona based on diversity jurisdiction, and, on August 5, 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the United States District Court for the Eastern District of Pennsylvania for pretrial proceedings as part of the Avandia Multidistrict Litigation (Avandia MDL),[2] finding that the "Mayfield Family action involves common questions of fact with actions previously transferred to MDL No. 1871."

_____

[1] Rosie was a resident of Arizona prior to her death.
[2] "On October 16, 2007, the United States Judicial Panel on Multidistrict Litigation

2

Meanwhile, on April 16, 2015, the District Judge in the Avandia MDL issued a pretrial order—which applied to "all cases that are originally filed in, transferred to, or removed to this Court and assigned to MDL 1871 on or after the date of this Order"— requiring that plaintiffs provide GSK an expert report[3] within 60 days of the date their action was transferred to the Avandia MDL. The order further provided that, if a plaintiff did not timely submit a report, GSK could send a deficiency notice, and then move to dismiss a complaint 14 days later if a plaintiff still had not filed a complying expert report.

On August 6, 2015, GSK sent the Mayfields a letter accurately advising them that that their report would be due on October 5, 2015, but the Mayfields did not submit a report by that date. On October 13, 2015, GSK sent the Mayfields another letter stating that if they did not submit a report by October 27, 2015, it would move for dismissal. After Lawanda Mayfield contacted GSK, it permitted them to file their report by November 10, 2015, before moving for dismissal. Around that date, James Mayfield submitted a letter to GSK and the District Judge, in which he appeared to suggest that Rosie's medical records—which apparently were in GSK's possession—were sufficient

---

created MDL No. 1871, In re Avandia Marketing, Sales Practices and Products Liability Litigation, in the Eastern District of Pennsylvania, where it has remained." In re Avandia Mktg. Sales Practices, 658 F. App'x 29, 30 (3d Cir. 2016).

[3] The District Judge issued the order under Federal Rule of Civil Procedure 26(a)(2), which governs expert disclosures and provides, in part, that "[a] party must make [expert] disclosures at the times and in the sequence that the court orders." Among other things, the report was required to contain an expert's opinion, within a reasonable degree of medical certainty, that a particular plaintiff's injury was caused by ingestion of Avandia.

to proceed in the litigation.[4]  The Mayfields never filed a complying expert report, however.

GSK moved for dismissal under Federal Rule of Civil Procedure 37 on December 4, 2015, and, after the Mayfields failed to respond for almost a year, the District Judge dismissed their complaint with prejudice on October 19, 2016.  A month later, Nicole Mayfield submitted a letter to the District Judge, stating that the Mayfields had attempted to obtain an expert report, but were unable to do so because they were proceeding pro se, and suggesting that they should be permitted to proceed to trial based on general existing medical knowledge about the dangers of Avandia.  This timely appeal ensued.

## II.

We have jurisdiction under 28 U.S.C. § 1291.  We review, for abuse of discretion, the District Court's dismissal of a complaint under Rule 37 for failure to comply with pretrial discovery orders, see Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co., 843 F.2d 683, 691 (3d Cir. 1988), based on the factors set out in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868-70 (3d Cir. 1984), which are: (1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim or defense.  Not all factors need to be satisfied for the District Court to dismiss a complaint, and while we

---

[4] He wrote: "If defendant's counsel would take the time to review the medical records that they requested on behalf of the victim they would be able to see and verify the onset of new injuries and the deteriorating health of the victim by date and year."

recognize that the sanction of dismissal is extreme and should be reserved for cases where it is "justly merited," our standard of review is deferential. Ware v. Rodale Press, Inc., 322 F.3d 218, 221-22 (3d Cir. 2003).

The District Court explicitly addressed four factors in dismissing the Mayfields' complaint: (1) that the Mayfields were personally responsible for their non-compliance; (2) that the non-compliance "reflect[ed] an intentional disregard for the Court's instructions"; (3) that GSK was prejudiced by the delay arising from non-compliance; and (4) that no other, lesser sanctions would have been effective. The Mayfields do not directly argue that the District Court inappropriately applied the Poulis factors; instead they argue that (1) they were unable to obtain a complying expert report, despite having attempted to do so; (2) Rosie's medical records, GSK's previous settlement offer in the Missouri action, and other existing general medical knowledge concerning the dangers of Avandia constituted sufficient proof to proceed to trial; and (3) the District Court's pretrial order did not apply to them because they initially filed their action in Arizona state court in March 2015. None of these arguments persuades us that the District Court abused its discretion in dismissing their complaint.[5]

---

[5] Although the Mayfields did not submit any filings in the District Court, Nicole Mayfield's November 2016 letter to the District Judge, read liberally, raised the first two arguments the Mayfields assert here. James Mayfield's November 2015 letter, submitted to GSK and the District Judge, appears to have asserted their third argument here. To the extent that these letters were insufficient to preserve their arguments, we have "discretionary power to address issues that have been waived," especially where, as here, "the proper resolution of the legal question . . . is reasonably certain." Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005).

5

First, the District Judge's April 16, 2015, order—which applied to all cases transferred to the Avandia MDL after that date—plainly applied to the Mayfields' action, which was transferred to the Avandia MDL in August 2015. The Mayfields appear to argue that, because they filed their action in state court before the District Judge issued the order, it did not apply to them. This argument simply misreads—or overlooks—the unambiguous language of the order.

As to their remaining arguments, we have recognized that multidistrict litigation "presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation." In re Asbestos Prod. Liab. Litig., 718 F.3d 236, 247 (3d Cir. 2013). This wide latitude applies, in particular, to issuing discovery orders, and to dismissing actions for non-compliance with such orders, especially where, as here, "the plaintiffs were put on notice by a motion that dismissal was being sought, and given the opportunity to oppose the motion." Id.[6] Because the District Judge's routine order here certainly fell within the wide case-management latitude we afford district courts in multidistrict litigation, and because the Mayfields do not dispute that they failed to comply with it—despite having been

---

[6] In In re Asbestos Prod. Liab. Litig., 718 F.3d at 245, we concluded that the district court did not abuse its discretion in dismissing the claims of multiple plaintiffs when they failed to comply with a similar pretrial discovery order—which required plaintiffs to submit a "complete [asbestos] exposure history."

provided ample opportunity to do so—the District Court did not abuse its discretion in dismissing their complaint.

Finally, although the Mayfields have not directly challenged the District Court's application of the Poulis factors,[7] we perceive no abuse of discretion in their application. As an initial matter, we have observed that a District Court need not "explicitly weigh all of the factors" before dismissing a complaint. In re Asbestos Prod. Liab. Litig., 718 F.3d at 248. There is no dispute that the Mayfields were aware of the expert-report requirement by August 6, 2015, when GSK so notified them. There is also no dispute that, by October 2015, the Mayfields were aware that GSK would seek dismissal of their complaint if they did not file a complying expert report by November 10, 2015. Despite this knowledge, they submitted *nothing* until more than a year later, when Nicole Mayfield submitted a letter to the District Judge—after their complaint had been dismissed—essentially claiming that they were unable to obtain an expert report and suggesting that they should have been able to proceed based on other evidence.

Because the Mayfields are proceeding pro se, they are personally responsible for their non-compliance. See Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002). Although the District Court did not explicitly address the Mayfields' history of dilatoriness, it "signaled [its] view" as to this factor, In re Asbestos Prod. Liab. Litig., 718 F.3d at 248, by noting their continuing non-compliance, despite having been provided

---

[7] They argue, on appeal, merely that "the district court's decision and reason to dismiss the case was incorrect."

extensions of time to do so. The Court also did not explicitly address the meritoriousness of their claim, but the Mayfields effectively prevented it from doing so by failing to file a complying report. Id. at 248 ("[B]y not coming forth with a diagnosis supplemented by a complete exposure history . . . Plaintiffs were preventing the District Court from being able to decide whether the claims were meritorious."). And while the Mayfields may dispute the District Court's characterization of their non-compliance as "an intentional disregard for the Court's instructions"—according to the Mayfields, compliance was impracticable—this does not shift the balance of the factors in their favor. For one, they took no action in this case for over a year after becoming aware of the expert-report requirement. And, perhaps more importantly, this is not a case where they could have proceeded to trial without expert testimony to establish that Rosie's death was, in fact, attributable to Avandia.[8] For all of these reasons, we conclude that the District Court acted within its discretion when it determined that the Mayfields' continuing failure to obtain an expert report justified dismissal of their action. See id. at 247. Accordingly, we will affirm.

---

[8] Rosie's medical records stated that she suffered from morbid obesity, in addition to many other medical conditions. An expert would have been needed in this case to establish that her death could be attributed to Avandia, rather than these other conditions. See generally Riedisser v. Nelson, 534 P.2d 1052, 1054 (Az. 1975) (expert testimony required where "the result of negligence is not a matter of common knowledge among laymen").