**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 14-2980

———

IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION


*THE GIRARDI KEESE LAW FIRM,
Appellant
*(Pursuant to Rule 12(a), Fed R. App. P.)

———

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-07-md-01871)
District Judge:  Honorable Cynthia M. Rufe

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2015

Before:  FISHER, JORDAN, and SHWARTZ, *Circuit Judges*.

(Opinion Filed:  July 2, 2015)

———

OPINION*

———

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

The Girardi Keese Law Firm ("Girardi Keese") represents thousands of individuals in their claims against GlaxoSmithKline, L.L.C., over the use of the drug Avandia. Nearly all of these claims were brought in California state court, but some claims wound up in the multidistrict litigation ("MDL") coordinated for pretrial purposes in the United States District Court for the Eastern District of Pennsylvania. In 2009, Girardi Keese signed an Attorney Participation Agreement with the Avandia MDL's Plaintiffs' Steering Committee. In the Agreement, Girardi Keese agreed to pay seven percent of the recovery on its clients' claims arising from the use of Avandia into a litigation expense fund in exchange for the use of the Steering Committee's litigation work product. A few months later, the District Court issued a pretrial order establishing a fund to compensate the Steering Committee for common benefit work and incorporating a materially-identical form agreement.

Girardi Keese subsequently settled all of its clients' claims but has refused to pay seven percent of the settlement proceeds to the common benefit fund. The District Court ordered GlaxoSmithKline to hold back seven percent of the settlement proceeds for the common benefit fund. Girardi Keese challenges the District Court's jurisdiction over the dispute and the final fee award. We will affirm.

I.

Avandia is the trade name of a prescription drug developed and marketed by GlaxoSmithKline to treat type-two diabetes. Thousands of individuals have sued

GlaxoSmithKline over allegations that Avandia increases the individuals' risk of heart failure. For the cases that were filed in or removed to federal court, the Judicial Panel on Multidistrict Litigation consolidated the cases in the Eastern District of Pennsylvania in 2007 for coordinated pretrial proceedings. The District Court then appointed a Plaintiffs' Steering Committee to direct the proceedings. One of the members of the Steering Committee was an attorney at Girardi Keese.

In early 2009, the Girardi Keese attorney on the Steering Committee left the firm. A few months later, on May 12, 2009, another Girardi Keese attorney, Keith Griffin, signed a contract titled, "Attorney Participation Agreement," with the Steering Committee. The Agreement "incorporate[d] by reference any Order of the Court regarding assessments and incorporate[d] fully herein all defined terms from such Order(s)." App. at 205. The Agreement covered "each and every claim, case, or action arising from the use of Avandia in which [Girardi Keese] has a financial interest, whether the claim, case, or action is currently filed in state or federal court, or is unfiled, or is on a tolling agreement." *Id.* For these covered cases, Girardi Keese agreed to contribute seven percent of the gross recovery to "the Plaintiff's Litigation Expense Fund"—four percent to come from Girardi Keese's attorneys' fees and three percent to come from the clients' share of the recovery. *Id.* In exchange for seven percent of the recovery, the Steering Committee promised to provide work product developed by the Steering Committee and to "cooperate with [Girardi Keese] to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs." App. at 206. Additionally, the Agreement

3

authorized Girardi Keese to "apply to the Court for common benefit fees and reimbursement of expenses" if 1) the Steering Committee requested assistance; 2) Girardi Keese "expended time and efforts for the common benefit"; and 3) Girardi Keese submitted an application "in accordance with the Court's orders, or in the absence of such orders, the procedures established by the [Steering Committee]." *Id.*

Shortly thereafter, the Steering Committee moved for the creation of a common benefit fund to compensate attorneys for MDL administration and work product. On August 26, 2009, the District Court granted the motion and adopted a proposed order provided by the Steering Committee and GlaxoSmithKline as Pretrial Order 70. App. at 179. Pretrial Order 70 assessed a seven percent contribution—four percent from attorneys' fees and three percent from the clients' share—to the common benefit fund for any claim covered by the order. Pretrial Order 70 applied to "[a]ll Avandia claims, regardless of whether those claims are subject to the jurisdiction of [the MDL], tolled, unfiled, or filed in another jurisdiction" if, among other things, the attorney "sign[ed] on to the Participation Agreement, attached hereto as Exhibit 1." App. at 184. The order also "incorporated herein [the] voluntary Attorney Participation Agreement." App. at 183; *see also* App. at 194 ("The Participation Agreement is attached hereto as Exhibit 1 and is incorporated by reference and has the same effect as if fully set forth in the body of this order."). It set out a procedure by which attorneys who signed the Attorney Participation Agreement could request payment from the fund for work performed for the common benefit of plaintiffs and authorized by the Steering Committee. The Attorney

4

Participation Agreement attached to Pretrial Order 70 as Exhibit 1 was materially

identical to the Attorney Participation Agreement Girardi Keese signed in May 2009.[1]

Girardi Keese only represented clients before the MDL in about twenty-five cases.

However, Girardi Keese represented clients with Avandia claims in thousands of cases in

a consolidated California state-court proceeding. In addition to its own work product,

Girardi Keese used MDL work product, in the form of expert reports, to oppose

GlaxoSmithKline's motions for summary judgment in the California proceedings and

indicated to the state court that it would use a variety of MDL materials in a planned trial.

Ultimately, Girardi Keese and GlaxoSmithKline settled all of the cases for which Girardi

Keese served as counsel—whether in state court or before the MDL—in August 2012.

However, when GlaxoSmithKline indicated that it would withhold seven percent of the

settlement for each claim pursuant to the Attorney Participation Agreement, Girardi

Keese contested the applicability of the assessment to the California state-court cases.

On March 13, 2014, the Plaintiffs' Advisory Committee, which replaced the

Steering Committee,[2] moved for an order to show cause requiring Girardi Keese to

demonstrate why all of the claims for which it served as counsel were not subject to the

---

[1] *Compare* App. at 196-200 (Pretrial Order 70), *with* App. at 204-07 (Girardi Keese's signed Agreement). Most of the (minor) differences appear to be in terminology: "Eligible Counsel" as opposed to "Common Benefit Attorneys"; "Covered Claims" as opposed to "Assessed Cases"; and "Avandia Common Benefit Fund" as opposed to "Plaintiff's Litigation Expense Fund."

[2] In 2012, the District Court declined to renew the Steering Committee. In its place, the District Court appointed a group of coordinating counsel and a fee and cost allocation committee that serves as the Plaintiffs' Advisory Committee.

5

seven percent contribution to the common benefit fund described by the Attorney Participation Agreement. The District Court issued the order to show cause and held a hearing on March 26, 2014.

After taking evidence and hearing argument at the hearing and receiving supplemental briefing, on May 12, 2014, the District Court held that all of the settled claims were subject to the seven percent assessment and ordered GlaxoSmithKline to hold back the seven percent assessment from any settlement payments. App. at 7-8. The court reasoned that Girardi Keese used MDL work product and that the Attorney Participation Agreement covered all claims for which Girardi Keese served as counsel at the time of resolution. App. at 5-7. Girardi Keese filed a timely appeal.

II.

We begin, as we must, with jurisdiction. The Plaintiffs' Advisory Committee questions the existence of our appellate jurisdiction over the District Court's order. Girardi Keese argues that the District Court lacked jurisdiction to order GlaxoSmithKline to hold back the seven percent assessment. We address each jurisdictional issue in turn.

A.

Subject to limited exceptions not applicable here, we review final orders of the district courts. 28 U.S.C. § 1291. The Plaintiffs' Advisory Committee here suggests that the order Girardi Keese appeals is not final because it is similar to "an MDL interim fee award." Appellees' Br. at 1 (citing *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 156 (3d Cir. 2005)). In that case, the district court was asked to make an award of

6

attorneys' fees to the MDL's coordinating counsel. The court found that it was premature to make a final award to counsel, but did award counsel $153 million and allowed counsel to make another request for a final award in the future. *In re Diet Drugs*, 401 F.3d at 150-52. We held that such an award was not a final order under § 1291. This was because "the total fee award has [not] been firmly established"; rather, the District Court imposed "an interim award of attorneys' fees . . . [, which] foresees further and additional action by the district court, thus continuing, but not concluding, the fee litigation." *Id.* at 156-57. We also determined that the interim fee award was not a "collateral order" that is appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), because it was not conclusive or otherwise unreviewable. 401 F.3d at 159-60. Thus, we concluded we lacked jurisdiction over the appeal.

We have not addressed whether an appeal from a fee assessment is an appealable, final order. We agree that a fee assessment may be properly analogized to a fee award to determine whether the order is final, but we disagree with the Plaintiffs' Advisory Committee that the situation in *In re Diet Drugs*, 401 F.3d at 143, is the most analogous situation to this case.

Rather, we conclude that this case is more similar to the situation in a different *Diet Drugs* opinion: *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009). In that case, we found that a final award of attorneys' fees was an appealable, final order because "it bestowed a definitive award on Class Counsel." *Id.* at 537 n.30. Our jurisprudence treats fee awards that have been "reduced . . . to a definite amount" as

7

appealable, final orders. *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 286 (3d Cir. 2007).

Here, the fee assessment has been reduced to a definite amount. The cases for which Girardi Keese serves as counsel have been settled. The District Court ruled which of those cases was subject to an assessment—all of them—and stated how much of each settlement must be contributed to the common benefit fund—seven percent. Accordingly, because Girardi Keese's payment obligation has been reduced to a definite amount, we conclude that the District Court's fee assessment is an appealable, final order, and we have jurisdiction under 28 U.S.C. § 1291.

### B.

Now we turn to the jurisdiction of the District Court to enter the order. Under 28 U.S.C. § 1407, district courts are empowered to conduct coordinated, consolidated pretrial proceedings in cases transferred by the Judicial Panel on Multidistrict Litigation. Section 1407, however, "does not expand the jurisdiction of the district court to which the cases are transferred." *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). Thus, "a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred." *Id.* at 165-66. Relying on cases like *In re Showa Denko* and *In re Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014), Girardi Keese argues that by essentially ordering Girardi Keese to comply with the Attorney

8

Participation Agreement, the District Court improperly exercised jurisdiction over the California state-court cases even though they were not before the District Court.

In *In re Showa Denko*, the Fourth Circuit found that an order requiring state-court plaintiffs to contribute a portion of any recovery in their cases to pay for the MDL coordinating counsel exceeded the district court's jurisdiction because those plaintiffs "have not voluntarily entered the litigation before the district court nor have they been brought in by process." 953 F.2d at 166. Similarly, in *In re Genetically Modified Rice*, the Eighth Circuit affirmed the district court's ruling that it lacked jurisdiction to order state-court plaintiffs to contribute to a common benefit fund for MDL coordinating counsel because "the district court does not have the power to order parties in cases not before it to contribute to the Fund" and "equity is insufficient to overcome limitations on federal jurisdiction." 764 F.3d at 874; *see also Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976) ("[T]he District Court had not even a semblance of jurisdiction original, ancillary or pendent to order anything or anybody, and least of all to compel lawyers who were not parties to the action to pay $3,250 into a fund.")

We agree with Girardi Keese that had the District Court simply ordered the firm, as total strangers to the litigation, to contribute to the common benefit fund from the settlement of its clients' state-court cases, it would have exceeded its jurisdiction. However, that is not what the District Court did here. The proper question we must ask is did the District Court properly exercise jurisdiction to enforce the contract Girardi Keese made with the Plaintiffs' Steering Committee. We conclude that it did.

9

A district court that supervises a multidistrict litigation "has—and is expected to exercise—the ability to craft a plaintiffs' leadership organization to assist with case management." *In re Diet Drugs*, 582 F.3d at 547. Included in that ability "is the power to fashion some way of compensating the attorneys who provide class-wide services." *Id.* Here, the District Court issued an order—Pretrial Order 70—dictating how it would allow the leadership organization—the Steering Committee—to be compensated. One way was to assess a percentage of the recovery of the cases before the MDL. The District Court also permitted the Steering Committee to, essentially, trade work product for a share in the recovery in cases *not* before the MDL. The District Court identified a form agreement that the Steering Committee and interested counsel must use to participate in the common benefit scheme and "incorporated" the agreement into the order. App. at 183.

When a district court incorporates the terms of an agreement into a court order, "a breach of the agreement would be a violation of the order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Because a district court has jurisdiction to determine whether one of its orders has been violated, it may adjudicate whether an agreement incorporated into a court order has been breached. *Id.* (describing this power as within the court's "ancillary jurisdiction"). Thus, if the District Court incorporated Girardi Keese's Attorney Participation Agreement into Pretrial Order 70, it had

jurisdiction to determine whether Girardi Keese breached that agreement and, if so, to remedy that breach.[3]

Although Girardi Keese signed its Attorney Participation Agreement before the District Court entered Pretrial Order 70 and it is not exactly identical to the form agreement appended to the order, we find that Girardi Keese's Attorney Participation Agreement was incorporated into Pretrial Order 70. We reach this conclusion for several reasons.

First, Girardi Keese's Attorney Participation Agreement contemplates and expects that the District Court will enter an order concerning the agreement. In three places, the agreement refers to an "Order of the Court regarding assessments." *See* App. at 205 (stating that the agreement "incorporates by reference any Order of the Court regarding assessments" and that the assessment will satisfy Girardi Keese's obligations under the contract "absent extraordinary circumstances recognized by MDL 1871 Court Order") & 206 (stating that counsel may receive a distribution from the fund "pursuant and subject to any Order of the Court regarding assessments or the Fund"). At the time Girardi Keese and the Steering Committee entered into the Attorney Participation Agreement, no such

---

[3] We need not be concerned that the District Court's incorporation of the Attorney Participation Agreement impermissibly expanded its jurisdiction by unilaterally bringing non-parties before it because, as explained in greater detail below, the Attorney Participation Agreement clearly contemplated that it would be governed by future court order and Girardi Keese, having signed that agreement, cannot contend that it is not a party properly before the District Court. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (recognizing that parties may consent to personal jurisdiction by contractual agreement).

11

order concerning assessments or a fund existed. Thus, the parties to the agreement contemplated that the District Court would enter an order on assessments and a fund, and that the order would govern the agreement.

Second, the Attorney Participation Agreement created continuing obligations on both sides. Girardi Keese was obligated to pay the seven-percent assessment, and the Steering Committee made a continuing promise:

> As the litigation progresses and Common Benefit Work Product continues to be generated, the [Steering Committee] will provide [Girardi Keese] with such work product and will otherwise cooperate with [Girardi Keese] to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

App. at 206. Thus, at the time the District Court issued Pretrial Order 70, performance on both sides of the agreement was still in progress and could be supervised by court order.

Finally, the terms of Pretrial Order 70 indicate that the District Court not only incorporated into the order all agreements using the appended form order but also the agreements made that used the same terms. Pretrial Order 70 states,

> Participating Counsel are entitled to receive the MDL common benefit work product and the state court work product of those attorneys who have also signed the Participation Agreement and shall be entitled to seek disbursements as Eligible Counsel pursuant to paragraph 5 of this Order. In return, Participating Counsel agree to pay the assessment amount provided in paragraph 4 of this Order on all filed and unfiled cases or claims in state or federal court in which they share a fee interest.

App. at 183. Thus, the important factor for whether an agreement is an Attorney Participation Agreement that was incorporated into the order is not whether counsel

12

signed the exact same form as appended to Pretrial Order 70. Rather, it is whether the agreement contains the same obligations as those imposed by the order. Any agreement between counsel and the Steering Committee that tracks the requirements of Pretrial Order 70 was incorporated into the order.[4]

Pretrial Order 70 covered the same claims as those listed in Girardi Keese's Attorney Participation Agreement. *Compare* App. at 184 (defining covered claims for Pretrial Order 70), *with* App. at 205 (defining "Assessed Cases" for Girardi Keese's Attorney Participation Agreement). They assessed the same percentage and split of recovery from Avandia claims and directed GlaxoSmithKline to withhold the assessment before distribution. *Compare* App. at 185, *with* App. at 205. As noted above, for all intents and purposes, Girardi Keese's Attorney Participation Agreement contained all the requirements of Pretrial Order 70 and is materially identical to the appended form agreement.

Therefore, because the parties understood that the Attorney Participation Agreement would be governed by Pretrial Order 70, they had a continuing relationship under the agreement that could be governed by court order when the District Court issued the order, and Pretrial Order 70 incorporated agreements that contained the same obligations as required by the order, we conclude that Pretrial Order 70 incorporated Girardi Keese's Attorney Participation Agreement.

---

[4] It is irrelevant that Girardi Keese's Attorney Participation Agreement was signed before Pretrial Order 70 was issued. A court can incorporate an already-existing agreement into a court order.

This is not, as Girardi Keese argues, finding subject-matter jurisdiction by agreement of the parties. The agreement itself is not the source of the District Court's authority. Rather, the District Court's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel. The agreement was simply incorporated into an order the District Court was empowered to issue.

Because it was within the District Court's power to issue an order governing how to compensate the Steering Committee for its work and because Girardi Keese's Attorney Participation Agreement was incorporated into that order, the District Court had jurisdiction to adjudicate whether Girardi Keese[5] breached the Attorney Participation Agreement and thereby violated Pretrial Order 70.[6]

### III.

Turning to the merits of this appeal, Girardi Keese's sole argument is that the District Court should have granted Girardi Keese compensation for the common benefit work it performed. We review the District Court's fee determination for abuse of discretion, "which can occur if the judge fails to apply the proper procedures in making

---

[5] Girardi Keese also suggests that the District Court lacked jurisdiction to order GlaxoSmithKline to withhold the assessment from the clients' share of the settlement proceeds. However, Girardi Keese promised to contribute the entire assessment, and the District Court could ensure that it complied with the agreement and Pretrial Order 70. Whether it must reimburse its clients for that share of the assessment is a question governed by the representation agreement between Girardi Keese and its clients.

[6] We do not and need not decide whether, in the absence of Pretrial Order 70, the District Court could exercise jurisdiction over Girardi Keese's agreement with the Steering Committee—a court-appointed and court-supervised entity.

14

the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Diet Drugs*, 582 F.3d at 538 (internal quotation marks omitted).

Although Girardi Keese says it spent fourteen million dollars litigating its cases, it did not offer evidence that its efforts were for the common benefit as opposed to solely on behalf of its clients. We cannot say the District Court abused its discretion in failing to consider or grant a credit for the common benefit Girardi Keese provided when no evidence exists in the record that Girardi Keese actually provided a common benefit.

This is not to say, however, that Girardi Keese is *not* entitled to an award from the common benefit fund. If Girardi Keese makes the "proper showing" to the District Court required by Pretrial Order 70, then as "[a]ttorneys who have signed the Participation Agreement" the firm would be entitled to an award from the common benefit fund. App. at 188. If Girardi Keese believes it has provided a common benefit to all plaintiffs litigating over Avandia, it may and should apply to the District Court for such an award.

IV.

For the reasons above, we will affirm the District Court's order.