**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: BARD IVC FILTERS PRODUCT LIABILITY LITIGATION, | No. 22-15872 |
| ------------------------------ | D.C. No. 2:15-md-02641-DGC |
| DORIS JONES; et al*, | OPINION |
| *Plaintiffs*, | |
| and | |
| LAW OFFICES OF BEN C. MARTIN; MARTIN BAUGHMAN PLLC, | |
| *Appellants*, | |
| v. | |
| BABBITT & JOHNSON PA; BARON & BUD, PC; COMMON BENEFIT FEE AND COST COMMITTEE; BEUS GILBERT MCGRODER PLLC; BOSSIER & ASSOCIATES | |

---

* The court is not listing all approximately 8,600 plaintiffs.

PLLC; BRANCH LAW FIRM;
BRENES LAW GROUP, P.C;
DALIMONTE RUEB STOLLER
LLP; FARACI LANGE LLP; FARRIS
RILEY & PITT LLP; FEARS
NACHAWATI PLLC; FREESE &
GOSS PLLC; GALLAGHER &
KENNEDY PA; GOLDENBERG
LAW PLLC; HAUSFELD LLP;
HEAVISIDE REED ZAIC; LEVIN
PAPANTONIO THOMAS
MITCHELL RAFFERTY &
PROCTOR PA; LIEFF CABRASER
HEIMANN & BERNSTEIN LLP;
LOPEZ MCHUGH LLP;
MATTHEWS & ASSOCIATES;
MOTLEY RICE LLC; NATIONS
LAW FIRM; BABBITT JOHNSON
OSBORNE & LECLAINCHE PA;
PROVOST & UMPHREY LAW
FIRM LLP; GALLAGHER LAW
FIRM; TORHOERMAN LAW LLC;
WAGSTAFF & CARTMELL LLP;
WALKUP MELODIA KELLY &
SCHOENBERGER; WATKINS
LOURIE ROLL & CHANCE PC,

*Appellees*,

C. R. BARD, INC., a New Jersey
corporation, BARD PERIPHERAL
VASCULAR, INC., a subsidiary
and/or Division of defendant C.R.

Bard, Inc., an Arizona corporation,

        *Defendants-Appellees*,

 and

CHRISTIAN MOTTAS,
CHRISTIANA CARE HEALTH
SERVICES, INC., CHRISTIANA
CARE HEALTH SYSTEMS, INC.;
THOMAS BAUER, M.D.; CYNTHIA
HELDT, M.D.; CALIFORNIA
PACIFIC MEDICAL CENTER;
LAWRENCE L. SCHMETTERER,
M.D.; REGENTS OF THE
UNIVERSITY OF CALIFORNIA;
BARD MEDICAL DIVISION;
MCKESSON CORPORATION;
PAUL M. KIPROFF, M.D.;
RAYMOND L. BENZA, M.D.;
ALLEGHENY GENERAL
HOSPITAL; NEOMETRICS, INC.;
WESTCHESTER COUNTY
MEDICAL CENTER; KENNETH
COLLINS; JAMES H. DYER, Jr.;
JAMES W. MCLEOD, Jr.; DAMON
PAGE,

        *Defendants*.

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted April 18, 2023
Phoenix, Arizona

Filed August 24, 2023

Before:  John B. Owens and Bridget S. Bade, Circuit
Judges, and M. Miller Baker,[**] International Trade Judge.

Opinion by Judge Bade

## SUMMARY[***]

### Multidistrict Litigation

The panel affirmed the district court's order in this multidistrict litigation (MDL), *In re Bard IVC Filters Products Liability Litigation*, requiring common benefit fund assessments against the recoveries of claimants who were not involved in cases that were part of the MDL (non-MDL cases).

The panel held that the district court's order requiring common benefit fund assessments in the non-MDL cases was within the scope of the district court's authority to regulate the conduct of the MDL counsel and parties.  A district court properly exercises its authority to order

---

[**] The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

common benefit fund holdback assessments from claimants' recoveries in non-MDL cases when (1) counsel for claimants voluntarily consents to the district court's authority by signing, or otherwise entering into, a participation agreement requiring contributions in exchange for access to common benefit work product, (2) that participation agreement is incorporated into a court order, and (3) as a result of entering the participation agreement, counsel receives access to common benefit work product.  Because these requirements were satisfied here, the panel affirmed the district court's order denying claimants' motion to exempt non-MDL cases from common benefit fund assessments.

**COUNSEL**

Howard J. Bashman (argued), Law Offices of Howard J. Bashman, Fort Washington, Pennsylvania; Ben C. Martin, Ben Martin Law Group, Dallas, Texas; Laura J. Baughman, Martin Baughman PLLC, Dallas, Texas; for Plaintiffs-Appellants.

Shannon L. Clark (argued), Gallagher & Kennedy PA, Phoenix, Arizona; Joseph R. Johnson, Babbitt & Johnson PA, West Palm Beach, Florida; Russell W. Budd, Baron & Budd PC, Dallas, Texas; Roland Tellis, Baron & Budd PC, Encino, California; Wendy R. Fleishman, Lieff Cabraser Heimann & Bernstein LLP, New York, New York; Mark O' Connor, Beus Gilbert PLLC, Phoenix, Arizona; Sheila M. Bossier, Bossier & Associates PLLC, Jackson, Mississippi; Margaret M. Branch , Branch Law Firm, Albuquerque, New Mexico; Troy Brenes, Brenes Law Group, Irvine, California; Paul L. Stoller, Rueb Stoller Daniel LLP, Phoenix, Arizona; Hadley E. Lundback, Faraci Lange LLP, Rochester, New

York; Calle M. Mendenhall, Farris Riley & Pitt LLP, Birmingham, Alabama; Sherri A. Saucer, Nachawati Law Group, Dallas, Texas; Richard Freese, Freese & Goss, Birmingham, Alabama; Marlene L. Goldenberg, Nigh Goldenberg Raso Vaughn PLLC, Washington, D.C.; Richard S, Lewis, Hausfeld LLP, Washington, D.C.; Julia Reed, Julia Reed Zaic, Newport Beach, California; Matthew D. Schultz, Levin Papantonio Rafferty Proctor Buchanan O'Brien Barr & Mougey PA, Pensacola, Florida; Amorina P. Lopez, Lopez McHugh LLP, Aliso Viejo, California; David P. Matthews, Matthews & Associates, Houston, Texas; Fred Thompson III, Motley Rice LLC, Mount Pleasant, South Carolina; Howard L. Nations, Howard L. Nations Law Office, Houston, Texas; Joseph Osborne, Osborne & Francis, Boca Raton, Florida; Christopher T. Kirchmer, Provost & Umphrey Law Firm LLP, Beaumont, Texas; Michael T. Gallagher, Gallagher Law Firm, Houston, Texas; Tor A Hoerman, TorHoerman Law LLC, Edwardsville, Illinois; Thomas Philip Cartmell, Wastaff & Cartmell LLP, Kansas City, Montana; Spencer J. Pahlke and Douglas S. Saeltzer, Walkup Melodia Kelly & Schoenberger, San Francisco, California; Robert D. Roll, Watkins Lourie Roll & Chance PC, Atlanta, Georgia; for Appellees.

Richard B. North Jr, Nelson Mullins Riley & Scarborough LLP, Atlanta, Georgia; Kasey Curtis, Reed Smith LLP, Los Angeles, California; for Defendants-Appellees.

## OPINION

BADE, Circuit Judge:

Appellants, the Law Offices of Ben C. Martin and the law firm Martin|Baughman, PLLC (collectively, BCM), argue that the district court in this multidistrict litigation (MDL), *In re Bard IVC Filters Products Liability Litigation*, lacked authority to order common benefit fund assessments against the recoveries of claimants who were not involved in cases that were part of the MDL—that is, those with claims that were not filed in any court, or were filed in state court, or were filed in federal court after the MDL closed (collectively, non-MDL cases). After settling their clients' claims against C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, Bard), BCM moved to exempt the recoveries of their clients in non-MDL cases from common benefit fund assessments. The district court denied the motion, concluding that it had authority to order assessments for a common benefit fund based on the MDL statute, 28 U.S.C. § 1407(b), its inherent power to manage cases, BCM's consent to its order authorizing the assessments, and the common fund doctrine. In this appeal, BCM challenges that order.[1]

We hold that a district court properly exercises its authority to order common benefit fund holdback assessments from claimants' recoveries in non-MDL cases when (1) counsel for claimants voluntarily consents to the district court's authority by signing, or otherwise entering

---

[1] Although not listed in the caption, Appellees are all law firms awarded common benefit fees and expense reimbursements. Neither the plaintiffs nor the defendants in the underlying litigation are involved in this appeal.

into, a participation agreement requiring contributions in exchange for access to common benefit work product, (2) that participation agreement is incorporated into a court order, and (3) as a result of entering the participation agreement, counsel receives access to common benefit work product. Because these requirements were met here, we affirm the district court's order denying BCM's motion to exempt its non-MDL cases from the assessment of common benefit attorney's fees and costs.

I

Bard manufactures and markets medical devices, including blood clot filters. For several years, Bard defended product liability lawsuits alleging that its retrievable inferior vena cava (IVC) blood clot filters caused injuries and deaths. Beginning in August 2015, many of these cases were transferred to, or filed in, the MDL proceedings at issue here.[2] By the time the MDL closed in May 2019, it included more than 8,000 cases. This appeal challenges one aspect of the district court's management of these cases: the court's orders assessing a holdback on the recoveries in certain non-MDL cases to establish a common benefit fund.

A

At the outset of the MDL, the district court entered a case management order that appointed lead counsel for plaintiffs

---

[2] BCM represented 507 claimants who alleged that they suffered personal injuries related to the Bard IVC filters. According to BCM, they represented 201 claimants who filed suit in federal court and whose claims were transferred to the MDL, 41 claimants who filed suit in federal court after the MDL closed, 264 claimants who settled their claims without filing suit in any court, and 1 claimant who filed suit in state court.

(Plaintiffs' Lead Counsel, or PLC).  This order directed counsel to select and appoint a Plaintiffs' Steering Committee (PSC) to coordinate pretrial activities and trial planning.  Attorney Ben C. Martin, the sole owner of the Law Offices of Ben C. Martin and a shareholder of the law firm Martin|Baughman, became a member of the PSC at its inception.

A few months later, the court entered another case management order (CMO 6) to "provide for the fair and equitable sharing among plaintiffs, and their counsel, of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation."  This order established a common benefit fund to provide reasonable compensation for counsel who performed work that benefited all plaintiffs.  To pay for the common benefit fund, the court ordered an 8% assessment as a holdback on plaintiffs' recoveries, which included 6% for attorney's fees and 2% for expenses.[3]  The order applied to all cases pending or later filed in, or transferred or removed to, the MDL court (MDL cases), "regardless of whether the plaintiff's attorney sign[ed] the 'Participation Agreement.'"

CMO 6 also applied to participating counsel who signed or entered into the Common Benefit Participation Agreement (participation agreement), which was explicitly incorporated into the order and attached as an exhibit.  The participation agreement—which was a voluntary agreement

---

[3] The court later concluded that significant unanticipated common benefit work justified an increase in the assessment and therefore amended CMO 6 to increase the assessment for attorney's fees to 8% of the plaintiffs' recoveries.  The court did not increase the assessment for expenses.

between plaintiffs' attorneys, signed by Plaintiffs' Lead Counsel and participating plaintiffs' counsel—granted participating counsel access to common benefit work product in exchange for agreeing to the assessment against their clients' recoveries.[4]  Participating counsel were also eligible to receive compensation from the common benefit fund for performing common benefit work, and BCM applied for, and was awarded, compensation from the common benefit fund for work as participating counsel.  In contrast, non-participating counsel, while not required to pay an assessment on their clients' recoveries for cases filed in state court or for un-filed cases, were not entitled to receive common benefit work product and were not eligible to receive common benefit payments for any work performed or expenses incurred.

CMO 6 also established that all plaintiffs' counsel who signed the participation agreement would be considered

---

[4] As the district court explained, "[t]he common benefit work in this case include[d] millions of pages of reviewed documents, substantial [electronically stored information] discovery, scores of depositions (including trial preservation depositions after the MDL closed), and numerous experts retained and developed by the MDL's lead counsel." Plaintiffs' Lead Counsel also litigated "numerous *Daubert* challenges, multiple summary judgment motions (including one that would have defeated all plaintiffs' claims on the basis of preemption), numerous motions in limine, three multi-week bellwether trials, post-trial motions and appeals, and substantial settlement efforts," which benefited all plaintiffs.   The common benefit work also included "scores of depositions of general causation experts and Bard witnesses."   And Plaintiffs' Lead Counsel prepared a trial package to assist plaintiffs' counsel trying cases on remand.  The trial package included "almost all the work product developed in the MDL and qualifying pre-MDL cases, including tens of thousands of documents, motions, transcripts, exhibits, corporate documents, legal memos, and post-bellwether preservation depositions."

participating counsel, and that Plaintiffs' Lead Counsel and members of the PSC would automatically be considered participating counsel.[5]   The order further explained that "[t]he assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, . . . including cases pending in the MDL, pending in state court, unfiled, or tolled."

In April 2021, after extensive case management efforts, including bellwether trials and appeals, the court entered an order with its final suggestion of remand and transfer, pursuant to 28 U.S.C. § 1407(a).  By this time, thousands of the MDL cases had settled or were remanded, transferred to appropriate districts, or dismissed for failure to prosecute or lack of jurisdiction.  The district court declared that "[t]his MDL has now concluded."

As cases were being dismissed, transferred, and settled, participating counsel could dispute the allocation of common benefit fees before a court-appointed Special Master.  In September 2021, the Special Master submitted a final report on common benefit fee and expense allocations, indicating that all allocation disputes had been resolved.  In October 2021, the district court entered another case management order (CMO 51), which adopted the Special Master's report and recommendations and noted that all common benefit fee and expense disputes had been resolved.

In November 2021, BCM settled all its clients' Bard IVC filter claims, which included all its MDL cases and non-MDL cases.  BCM then moved to exempt its non-MDL cases

---

[5] Although BCM notes that "neither side has been able to locate any Participation Agreement signed by BCM," it does not dispute the district court's conclusion that BCM attorneys were automatically participating counsel because Ben C. Martin was a member of the PSC.

from the common benefit fee and cost assessments.  As set forth below in Section I.B, the district court denied the motion.  BCM timely appealed.[6]

B

The district court addressed BCM's motion to exempt its non-MDL cases from the common benefit assessments in a comprehensive order in which it thoroughly analyzed several bases for its authority to enforce its order requiring assessments from participating counsel's non-MDL cases. *See In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822 (D. Ariz. 2022).

First, the court agreed with other courts that have concluded that "the MDL statute is procedural in nature and does not clearly confer on federal courts the power to create a common benefit fund or make assessments for that fund." *Id.* at 831.  But, the court noted, "the statute is not entirely irrelevant" because it provides that the Judicial Panel on Multidistrict Litigation will transfer cases to MDL judges for "coordinated or consolidated pretrial proceedings."  *Id.* (quoting 28 U.S.C. § 1407(b)).  And MDL judges may "exercise such inherent powers as are necessary to manage and complete those pretrial proceedings," including determining "how lead counsel will be paid for their extensive MDL work on behalf of all plaintiffs." *Id.*  Thus, the court concluded that although § 1407 is a procedural statute and "not itself a source of power for a court to establish and oversee a common benefit fund, it creates a complex and consolidated litigation process that makes the

---

[6] The district court also denied BCM's request to reduce the attorney's fees assessments on its clients' recoveries in MDL cases, but BCM does not challenge that part of the court's order in this appeal.

exercise of the court's inherent power uniquely necessary."
*Id*.

Second, the district court considered its inherent power
as a source of its authority to order common benefit
assessments from claimants' recoveries in non-MDL cases.
*Id*. at 831–35.  As the court stated, while such inherent power
in federal courts to manage cases is "well established," it is
not without limits.  *Id*. at 831–32 (citation omitted).  The
court explained that the exercise of such inherent power (1)
"must be a reasonable response to the problems and needs
confronting the court's fair administration of justice,"
(2) "cannot be contrary to any express grant of or limitation
on the district court's power contained in a rule or statute,"
and (3) may not be used to enforce "orders—particularly
those regulating conduct outside of the courtroom—against
the entire universe of potential violators." *Id*. at 832 (internal
quotation marks omitted) (quoting *In re Gen. Motors LLC
Ignition Switch Litig.*, 477 F. Supp. 3d 170, 189 (S.D.N.Y
2020)).  The court concluded that enforcement of its order
requiring common benefit assessments fell within those
limits, in part, because imposing assessments in MDL cases
to provide compensation to lead counsel was "a reasonable
response to the problems and needs confronting the court's
fair administration of justice," *id.* (citation omitted), and
because enforcement of its order was not contrary to any
express grant of or limitation on its power in a rule or statute,
*id*. at 833.

The district court also concluded that its "exercise of its
inherent power to impose common benefit assessments on
BCM's unfiled and state court cases [was] bolstered by the
fact that BCM knowingly entered into the Participation
Agreement incorporated into CMO 6." *Id*.  BCM knowingly
agreed to the terms of the participation agreement and took

advantage of those terms when it accessed common benefit work product and applied for and received common benefit funds for its common benefit work. *Id*. at 833–34. Thus, the court concluded that it had "the inherent power to enforce the terms of CMO 6 and the Participation Agreement, to hold BCM to its promise to pay the Court-ordered common benefit assessments on recoveries obtained in its unfiled and state court cases, and to hold BCM's clients to the agreement made by their counsel and surely included in their fee agreements with BCM."[7]  *Id*. at 835.

Third, the district court set forth a thorough explanation of the historical development of the common fund doctrine and its application in multidistrict litigation.[8]  *Id*. at 835–38. The court noted that the common fund doctrine has been "consistently cited" by MDL courts as a basis for common benefit assessments to compensate counsel for work that benefits all MDL plaintiffs. *Id*. at 836 (citation omitted). And while acknowledging that "MDLs generally do not produce an actual fund paid into court on which all plaintiffs can draw," as the common fund doctrine does, the court concluded that "the advantage conferred on all plaintiffs by

---

[7] The district court also cited and explained numerous ethical rules that required BCM to advise its clients, in writing, of the terms of its fee agreements, which would include the common benefit assessments that BCM agreed to pay by entering the participation agreement. *Id*. at 834.

[8] Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  It is intended to avoid the unjust enrichment that would result from allowing parties to "obtain the benefit of a lawsuit without contributing to its cost." *Id*.  And it permits a district court to use its managerial powers "to prevent this inequity by assessing fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id*.

a successful MDL prosecution is no less real.  The equitable reality underlying the common fund doctrine—that substantial work and expense by few has conferred a significant financial benefit on many—is the same."  *Id*. at 838.    The court concluded that those equitable considerations applied in this case because BCM and its clients accessed common benefit work product and financially benefited as a result. *Id*.  Thus, "[t]he compelling equities of the common benefit doctrine apply fully here." *Id.*

Finally, the district court stated that reliance interests were also relevant to its decision because the common benefit fund was established early in the litigation, and the PSC "managed and litigated this complex MDL to a conclusion, tried three bellwether cases, withstood Bard's preemption challenge, and amassed evidence and experts useable by all plaintiffs and their counsel." *Id*. at 839.  Thus, the PSC and other attorneys who performed common benefit work justifiably relied on participating counsels' agreements to pay common benefit assessments. *Id*.  Fairness required that BCM's attempt to avoid paying assessments be denied. *Id.* at 839–40.

With this background in mind, we turn to the issues before us, starting with our jurisdiction to hear this appeal.

II

The parties agree that we have jurisdiction under 28 U.S.C. § 1291, which provides for federal appellate jurisdiction over "all final decisions" of the district courts. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 408 (2015) (quoting 28 U.S.C. § 1291).   But we have "a special obligation to satisfy [ourselves] . . . of [our] own jurisdiction." *Bender v. Williamsport Area Sch. Dist.*, 475

U.S. 534, 541 (1986) (citation and internal quotation marks omitted).

Generally, "[a] decision is 'final' under § 1291 if it '(1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter.'"  *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 618 (9th Cir. 2022) (quoting *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 870 (9th Cir. 2004)).  However, finality is to be given a "practical rather than a technical construction." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  In determining whether fee awards are final for purposes of § 1291, we consider whether there was a final judgment on the merits, and whether there was a final determination on the fees question.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527, 531 (1881) (order granting attorney's fees from a common fund was final, notwithstanding that the district court was still administering the fund, because the order was "so far independent as to make the decision substantially a final decree for the purposes of an appeal").

Here, the MDL closed to new cases in May 2019.  By April 2021, thousands of cases pending in the MDL had settled, while others were eventually remanded or transferred to appropriate districts, and others were dismissed.  Plaintiffs' attorneys, including BCM, had the opportunity to dispute common benefit fee allocations before a Special Master, and in September 2021, the Special Master submitted a final report stating that all allocation disputes were resolved.  In October 2021, the district court adopted the Special Master's recommendations for fee and expense allocations and incorporated them into CMO 51. BCM settled all its clients' Bard IVC filter cases by November 2021, and in January 2022, BCM moved to

exempt its non-MDL cases from the common benefit fund assessments. In May 2022, the district court denied BCM's motion, leaving nothing for the district court to do except distribute any remaining common fund fee requests. Applying a "practical rather than a technical construction," *Cohen*, 337 U.S. at 546, we conclude the district court's May 2022 decision is final for purposes of § 1291, and we have jurisdiction over this appeal.

## III

The district court's determination of its authority to assess common benefit attorney's fees and costs presents a legal question, *see Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 771–75 (9th Cir. 1977) (concluding common fund doctrine permitted district court's allocation of fees to lead counsel in mass tort case, and that district court properly exercised its power to appoint lead counsel and restrict activities of nonlead counsel), which we review de novo, *see, e.g.*, *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1140 (9th Cir. 2009). We review the district court's factual findings for clear error. *See Vincent*, 557 F.3d at 767.

## IV

## A

This case presents a narrow question of the district court's authority to order common benefit fund assessments from plaintiffs' recoveries in non-MDL cases.[9] It does not

---

[9] Appellees argue that BCM waived its arguments on appeal by failing to object to the district court's orders. Even if we accepted this argument, we have the discretion to consider waived arguments that present purely legal issues, *United States v. Clack*, 957 F.2d 659, 661 (9th Cir. 1992), and we do so here; at least as to the arguments BCM made in its opening brief.

raise the broader question of the district court's authority to order such assessments on cases in the MDL. Indeed, we addressed that issue more than forty-five years ago in *Vincent* and held that a district court managing multidistrict litigation may appoint lead counsel, restrict the activities of non-lead counsel, and create a fund consisting of a percentage of the MDL plaintiffs' recoveries to compensate lead counsel "for work performed for the benefit of all plaintiffs." 557 F.2d at 763, 772–74. We concluded that the district court had this authority under the common fund doctrine. *Id.* at 768–71 (citing *Trustees v. Greenough*, 105 U.S. 527 (1881), and *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885), and explaining the historical development of the common fund doctrine); *see also id*. at 772 (concluding that lead counsel "engaged in substantial work after their appointment that benefited all claimants" and thus "the common fund doctrine permits fee shifting of the sort ordered by the district court"). Other circuits have similarly held that an MDL court has the authority to order assessments against MDL plaintiffs' recoveries to establish a common benefit fund to compensate plaintiffs' counsel for common benefit work.[10] And district courts managing MDL cases have also reached this conclusion.[11]

---

[10] *See In re Diet Drugs*, 582 F.3d 524, 546–47 (3d Cir. 2009); *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 164 (4th Cir. 1992); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1016–18 (5th Cir. 1977).

[11] *See, e.g.*, *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 957 (N.D. Cal. 2021); *Gen. Motors*, 477 F. Supp. 3d at 179; *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 770–71 (E.D. La. 2011).

B

Indeed, BCM does not dispute that the district court had the authority to order common benefit assessments against the recoveries of its clients with cases in the MDL.  Instead, BCM argues that the district court lacked the "judicial authority," or "judicial power," to order holdback assessments from plaintiffs' recoveries in non-MDL cases.  Although BCM also sometimes vaguely refers to the court's "jurisdiction," it does not argue that the district court's orders fail for lack of subject-matter jurisdiction.  Thus, it appears that BCM is using the term "jurisdiction" in the general sense of the court's authority.

We conclude that, as thoughtfully considered by Judge Chhabria in *Roundup*, 544 F. Supp. 3d at 965, and Judge Furman in *General Motors*, 477 F. Supp. 3d at 187–89, whether the district court had the authority to order common benefit fund assessments in non-MDL cases is not a question of subject-matter jurisdiction under the circumstances of this case, where plaintiffs' counsel entered into a participation agreement in exchange for common benefit work product.  This is because the MDL court "is not exercising jurisdiction over cases or parties not before it; it is exercising jurisdiction over the MDL.  Pursuant to that jurisdiction, the [c]ourt has authority to regulate the conduct of the MDL parties and MDL counsel, even where such regulation affects the interests of others."  *Gen. Motors*, 477 F. Supp. 3d at 189.

Thus, we conclude that the question before us is whether the district court's order requiring common benefit assessments in non-MDL cases is within the scope of its authority to regulate the conduct of the MDL counsel and

parties.**[12]** *See id*.  BCM seems to recognize as much, stating in its briefing that "the district court possessed authority over BCM in its role as counsel in the cases in which BCM was representing claimants with cases in the MDL proceeding."

On this question, we are persuaded by the Third Circuit's reasoning in *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 617 F. App'x 136, 141–44 (3d Cir. 2015), in which the court, albeit in an unpublished disposition, considered circumstances remarkably similar to this case and concluded that the district court acted within its authority.  In that case, a law firm entered into a participation agreement with the MDL plaintiffs' steering committee and agreed to pay a percentage of its clients' recoveries, including in non-MDL cases, in exchange for use of the steering committee's work product.  *Id*. at 138.  The district court incorporated "a materially-identical form agreement"

---

[12] Our decisions in *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976), and *Vincent*, 557 F.2d 759, are not to the contrary.  In *Hartland*, we addressed the district court's authority to require an assessment from a claimant who had not filed a lawsuit in any court and had not signed a stipulation regarding the use of consolidated discovery.  544 F.2d at 996. We stated that the district court did not have "even a semblance of jurisdiction—original, ancillary or pendent—to order anything or anybody, and least of all to compel lawyers who were not parties to the action to pay $3,250 into a fund.  There was just 'no action' pending anywhere."  *Id*. at 1001.  In *Vincent*, we followed *Hartland* and stated that "'nonparties,' people who have never been made parties to a suit anywhere, cannot confer [subject-matter] jurisdiction by failing to raise their voices . . . in protest against the attempted exercise of jurisdiction." *Vincent*, 557 F.2d at 766.  Neither of these cases addressed the issue presented here—whether an MDL court, with unquestioned jurisdiction over counsel in the MDL, may enforce a participation agreement, incorporated into a court order, against recoveries in counsel's non-MDL cases.  Thus, the subject-matter jurisdiction concerns noted in *Hartland* and *Vincent* do not apply in this case.

into an order establishing a common benefit fund to compensate the steering committee. *Id*. The law firm used the MDL steering committee's work product in its state court cases, but after settling all its cases in the MDL and in state court, it objected to the applicability of the assessment to its state court cases. *Id*. at 139. The district court concluded that all the settled claims were subject to the common benefit assessment. *Id*.

The Third Circuit affirmed, concluding that the law firm was bound by the district court's common benefit order and, because the participation agreement was incorporated into that order, "a breach of the agreement would be a violation of the order." *Id*. at 142 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). The court further explained that "[b]ecause a district court has jurisdiction to determine whether one of its orders has been violated, it may adjudicate whether an agreement incorporated into a court order has been breached." *Id*. (citing *Kokkonen* as describing this power as within the court's "ancillary jurisdiction"). Therefore, if a participation agreement is incorporated into a court order, the district court has "jurisdiction to determine whether [the law firm] breached that agreement and, if so, to remedy that breach." *Id*.

Finally, the Third Circuit rejected the law firm's argument that it was "finding subject-matter jurisdiction by agreement of the parties." *Id*. at 143. "The agreement itself," the court explained, "is not the source of the [d]istrict [c]ourt's authority." *Id*. Instead, "the [d]istrict [c]ourt's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel. The agreement was simply incorporated into an order the [d]istrict [c]ourt was empowered to issue." *Id*.

Here, as in *Avandia*, BCM voluntarily entered into a participation agreement with Plaintiffs' Lead Counsel and agreed to assessments against its clients' recoveries in non-MDL cases in exchange for access to MDL common benefit work product.[13]  The participation agreement was explicitly incorporated into a district court order.  And BCM took advantage of the terms of the participation agreement "when it repeatedly accessed common benefit work for the good of its clients, and when it applied for and received payments of common benefit funds for its own common benefit work, including its state court work."  *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d at 833.

Therefore, we conclude that the district court acted within its authority when it ordered assessments to establish a common benefit fund to compensate counsel for common benefit work, and when it enforced the incorporated participation agreement by denying BCM's motion to exempt its non-MDL cases from the assessments.  And, as we explain next in Section IV.C, we conclude that the cases BCM relies upon to argue that the district court lacked authority to order common benefit assessments are distinguishable and do not require a contrary result.

---

[13] In its reply brief, BCM asserts that we should not rely on Appellees' argument that it consented to the holdbacks under the participation agreement because to do so would violate the unconstitutional conditions doctrine.  Appellees, however, did not inject this issue into the case; the district court relied in part on BCM's consent.  Because BCM's opening brief did not raise an unconstitutional conditions challenge to the district court's reliance on BCM's consent to the participation agreement, we decline to entertain that late challenge.  *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.") (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

C

To support its arguments challenging the scope of the district court's authority, BCM relies on four cases concluding that a district court lacked the authority to require non-MDL claimants to contribute to common benefit funds: two of our cases from the 1970s, *Hartland*, 544 F.2d 992, and *Vincent*, 557 F.2d 759; an Eighth Circuit decision, *In re Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014); and the district court's order in *Roundup*, 544 F. Supp. 3d 950.  However, these cases do not determine whether a district court has authority to order assessments against the recoveries of claimants in non-MDL cases when their counsel have voluntarily entered into a participation agreement that is incorporated into a court order and requires such assessments in exchange for access to common benefit work product.  Therefore, these cases do not answer the narrow issue presented here, and BCM's reliance on these cases is misplaced.

Moreover, none of these cases stands for the broad proposition that BCM advocates for here: that a district court *always* lacks authority to order common benefit assessments against recoveries in non-MDL cases.  Rather, these cases stand for the unremarkable proposition that a district court lacks authority to order assessments against the recoveries of claimants who are "complete strangers" to the MDL the court is managing.  *Cf. Gen. Motors*, 477 F. Supp. 3d at 187 (distinguishing cases in which the district courts sought to impose an assessment on "complete strangers" to the litigation pending before the court); *Avandia*, 617 F. App'x at 141 (explaining that if the district court had "simply ordered" the plaintiffs' attorneys, as "total strangers to the litigation, to contribute to the common benefit fund from the settlement of its clients' state-court cases, it would have

exceeded its jurisdiction," but concluding that the district court "properly exercise[d] jurisdiction to enforce [a participation agreement]").

### 1

In *Hartland*, we considered a holdback order that reached the recoveries of two strangers to the MDL—one person who had sued the airline in state court and whose case had not been removed to federal court, and one person who had settled with the airline without filing suit.  544 F.2d at 996–97.  Importantly, unlike this case, neither claimant nor their counsel was subject to the district court's jurisdiction, signed a participation agreement, or received or utilized any common benefit work.  *Id.* at 994–96.  Although these claimants were not litigating their claims as part of the MDL, the defendant airline deposited a percentage of their recoveries into a common benefit fund.  *Id.* at 997.  We concluded that, in circumstances involving strangers to the MDL, compelling contributions to the common benefit fund from the non-MDL claimants was a "usurpation of power" by the district court and therefore ordered the funds returned.  *Id.* at 1001–02.

### 2

We again considered a holdback order that reached the recovery of a stranger to the MDL in *Vincent*.  557 F.2d at 764–65.  After the district court entered an order requiring a holdback from the plaintiffs' recoveries, the defendants petitioned the court for approval of a previously negotiated settlement that a claimant had reached with defendants directly without filing suit.  *Id.* at 765.  Neither the claimant nor her attorneys had entered into a participation agreement.  *See id.*

Relying on *Hartland*, we reaffirmed that a district court does not have the power to order holdbacks from the recoveries of claimants who had not filed suit or otherwise used the judicial process to obtain a settlement. *Vincent*, 557 F.2d at 765–66. We also concluded that another claimant, who had settled before the court appointed lead counsel and thus could not have received any benefit from lead counsel's discovery efforts, could not be required to contribute to a fund to compensate lead counsel. *Id.* at 766–67.

3

In *In re Genetically Modified Rice Litigation*, the district court ordered holdback assessments on awards and settlements in MDL cases but declined to order holdbacks on plaintiffs' recoveries in state court cases. 764 F.3d at 866. The MDL plaintiffs' lead counsel appealed, and the Eighth Circuit affirmed, concluding that the district court did not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries. *Id.* at 873–74 (citing *Showa Denko*, 953 F.2d at 166; *Hartland*, 544 F.2d at 1001).[14] The Eighth

---

[14] In *Showa Denko*, the Fourth Circuit held that the district court lacked authority to require common benefit contributions from plaintiffs outside the MDL (state court plaintiffs, plaintiffs in federal cases not transferred to the MDL, and claimants who had not yet filed suit) because those claimants had "not voluntarily entered the litigation before the district court nor [had] they been brought in by process." 953 F.2d at 164, 66. The court concluded that the MDL statute did not give the district courts such wide-ranging authority, concluding that "[t]he district court simply has no power to extend the obligations of its order" to claimants "who have not sued" or to "plaintiffs in state and untransferred federal cases" with no relationship to, or involvement in, the MDL. *Id.* at 166. Unlike BCM in this case, neither the non-MDL claimants nor their attorneys had entered into participation agreements in which they agreed to assessments in exchange for access to common benefit work product.

Circuit noted that "[l]ead [c]ounsel assert no independent basis for jurisdiction over these state-court actions." *Id*. at 873. And the court rejected lead counsel's argument that, because the district court had jurisdiction over the defendant and plaintiffs' counsel in the MDL, it could order withholdings from "related" state court cases. *Id*. at 874.

As the Eighth Circuit explained, the state court plaintiffs had not agreed to be part of the MDL and had not participated in the MDL settlement, and the participation of their attorneys in the MDL or the MDL settlement, without more, did not provide the district court with "authority over separate disputes between state-court *plaintiffs* and [the defendant]." *Id*. Unlike this case, the MDL plaintiffs' counsel had not entered into a participation agreement, which was incorporated into a court order, and in which they agreed to assessments in non-MDL cases in exchange for access to common benefit work product. Thus, the state-court plaintiffs in *Genetically Modified Rice* were strangers to the MDL.

4

Finally, despite BCM's reliance on the district court's decision in *Roundup*, that case ultimately does not help BCM because the district court did not take a position on the issue that is before us. In that case, while the district court questioned its authority to order assessments from the recovery of a claimant whose attorney signed a participation agreement, it avoided the issue because it concluded that it would decline to exercise any authority it had to order such assessments. *Roundup*, 544 F. Supp. 3d at 968.

---

Like the non-MDL plaintiffs in the other cases BCM cites, these plaintiffs were strangers to the *Showa Denko* MDL.

Moreover, as the district court here described at length, the *Roundup* decision is distinguishable from this case for several reasons. *See In Re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d at 828–30. These differences include the scope of the requested assessments, whether access to the common benefit work product provided a benefit to participating counsel, whether access to such work product was limited to attorneys who signed the participation agreement, whether that work product advanced the participating counsel's cases, whether lead counsel were adequately compensated without common benefit payments, whether the common benefit work prompted the defendant to settle, and the timing of the courts' orders setting the common benefit assessments. *Id*. Therefore, we conclude that the district court's analysis in *Roundup*, while thorough and thoughtful, does not alter our conclusions.

\* \* \* \*

Contrary to BCM's arguments, the district court did not assert its authority to order holdbacks in non-MDL cases simply because the claimants in those cases just "happened to hire a lawyer who represents a plaintiff within the MDL." And unlike the claimants in the cases BCM relies upon, neither BCM nor its non-MDL clients were complete strangers to the MDL. Instead, BCM entered into a participation agreement, which was incorporated in the district court's order establishing a common benefit fund, whereby BCM agreed to assessments against its non-MDL cases in exchange for access to common benefit work. Moreover, BCM reaped the benefit of this agreement by repeatedly accessing common benefit work product and using it in its non-MDL cases. Therefore, after knowingly and voluntarily entering the participation agreement, BCM

cannot now complain that the district court lacked authority to enforce its orders incorporating that agreement.

V

Although there are circumstances under which a district court lacks the authority to order holdbacks from non-MDL cases, *see, e.g.*, *Hartland*, 544 F.2d at 1001–02, the district court did not exceed its authority here.  BCM entered into the participation agreement, which was incorporated into a court order, and agreed to hold back assessments against its clients' recoveries in exchange for access to common benefit work product.  Under these circumstances, the district court appropriately exercised its authority to enforce its orders establishing a common benefit fund, and therefore properly denied BCM's motion to exempt its non-MDL cases from common benefit assessments.

**AFFIRMED.**