In re SHOWA DENKO K.K. L–TRYP-TOPHAN PRODUCTS LIABILI-TY LITIGATION–II.

Lola J. RAPOPORT and Leonard Rapoport, Respondents,

v.

SHOWA DENKO K.K.; Showa Denko of America, Incorporated, Petitioners,

and

Solgar Company, Incorporated; General Nutrition Corporation; Twin Laboratories, Incorporated; Walgreen Company; Walgreen Laboratories, Incorporated; Triarco Corporation; P. Leiner Nutritional Products, Incorporated; Revco Drug Stores, Incorporated; Merchandisers, Incorporated; Xcel Laboratories, Incorporated; Ajinomoto USA, Incorporated; Mitsuitoatsu Chemicals, Incorporated; MTC America, Incorporated; American Drug Stores, Incorporated; Bergen Brunswig Drug Company; Safeway, Incorporated; Nature Made Nutritional Products; Ide Interstate; Goldline Laboratories, Incorporated;

Nutro Laboratories, Incorporated; Leroy Pharmacies, Incorporated; Natures Bounty, Incorporated; Vitamin Shoppe, Incorporated; Natrol Incorporated; Jameson Pharmaceutical Corporation; Bio–Energy, Incorporated; Now Foods, Incorporated; Puritan's Pride, Incorporated; Natural Wealth, Incorporated; Albertson's Incorporated; Source Naturals, Incorporated; Vitamin Power, Incorporated; Health Food Shoppe of Fort Wayne; Osco Drugs, Incorporated; Contract Pharmacal Corporation; Star Professional Pharmaceuticals, Incorporated, dba Star Pharmaceuticals, Incorporated; Goldline, Incorporated; Amcon Industries, Incorporated; Interstate Drug Exchange, Incorporated; Life–Line Nutritional Products, Incorporated; Nutrilite Products, Incorporated; Wal–Mart Stores, Incorporated; Jameson Nutritional Division; Rugby Laboratories, Incorporated; Rugby–Darby Group Companies, Incorporated; Rugby–Darby Group, Incorporated; Nutrition Headquarters, Incorporated; Bio–Organic Brands, Incorporated; Eastern Vitamins; Freshlabs, Incorporated; Makers of Kal, Incorporated; Natural Alternatives International, Incorporated; Orlove Enterprises, Incorporated; Stur–Dee Health Products, Incorporated; Windmill Natural Vitamin Company; Garden State Nutritionals, Incorporated; Nature Products, Incorporated; Pharnavite Corporation, Defendants.

No. 91–8074.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1991.

Decided Jan. 10, 1992.

Edwin B. Mishkin, Cleary, Gottlieb, Steen & Hamilton, New York City, argued (George J. Grumbach, Jr., Edmund H. Kerr, Richard W. Hulbert, Daniel J.H. Greenwood, Norman Menachem Feder, Michael R. Chayet, Cleary, Gottlieb, Steen & Hamilton, New York City, Donald L. Morgan, Richard deC. Hinds, Washington, D.C., on brief), for petitioners.

Roger Paul Brosnahan, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., argued (Jerry W. Blackwell, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., Thomas Dewitt Rogers, III, Ness, Motley, Loadholt,

Richardson & Poole, Charleston, S.C., William S. Davies, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, S.C., on brief), for respondents.

Before MURNAGHAN, WILKINSON and NIEMEYER, Circuit Judges.

NIEMEYER, Circuit Judge:

We are asked to review an administrative order, Order No. 7, entered in the L–Tryptophan multi-district litigation, MDL Docket No. 865, pending in the District of South Carolina, where over 470 federal cases have been consolidated for pretrial proceedings. Showa Denko K.K. and Showa Denko America, Inc. (collectively Showa Denko), together with some 300 other defendants, are sued for damages for personal injury resulting from the ingestion of pills containing the amino acid. L–Tryptophan.

The district court entered Order No. 7 to provide a funding mechanism to reimburse members of a steering committee of plaintiffs' lawyers, principally for discovery-generated expenses incurred on behalf of the plaintiffs. The intent of the order is to require each plaintiff in the United States who has a claim based on injury from L–Tryptophan to pay $1,000 into a common fund, plus 0.5% of any settlement reached or verdict entered (with a credit for the initial $1,000 assessment), on the theory that, whether a plaintiff settles or litigates, he or she benefits from the discovery. Consequently, the order attempts to reach not only plaintiffs in cases pending in the multi-district litigation, but also plaintiffs in federal cases not transferred to the multidistrict litigation, plaintiffs in some 683 pending state cases, and approximately 180 claimants known to Showa Denko who have not yet filed suit in any court. The district court's order seeks to enforce the assessments by requiring Showa Denko to "certify" that the assessments have been paid by plaintiffs and claimants whenever it settles or pays a verdict in a case or discloses discovery materials generated in the multi-district litigation. The order provides, in pertinent part:

2. In all cases presently filed or later filed in these proceedings, plaintiff's counsel shall initially deposit One Thousand Dollars ($1,000.00) for each injured plaintiff (excluding consortium claims) into Plaintiffs' Expense Fund....

3. At the close of any of these cases by settlement, verdict or otherwise, plaintiff's counsel shall deposit into Plaintiffs' Expense Fund one-half of one percent (0.5%) of the total sum, including consortium claims, for discovery and other approved expenses. A credit shall be applied for prior assessments paid....

4. The assessments contained in paragraphs 2 and 3 above shall also apply to actions venued in state courts, untransferred federal cases, and unfiled claims in which any MDL defendant is a party or payor.

5. At the close of any case by settlement, verdict, or otherwise, defendants [Showa Denko] shall certify that payments in amounts described in paragraphs 2, 3, and 4 above have been made ... provided that upon notice and cause shown by the plaintiff or defendants in non-MDL cases the court may order such payments to be reduced or waived. No party shall furnish to any non-MDL plaintiff any product of the MDL discovery or permit its use until ascertaining that such plaintiff has complied with this court's confidentiality orders and is current in payments of the assessments herein.

The court concluded its order with the certification required for immediate appeal pursuant to 28 U.S.C. § 1292(b).

Showa Denko appeals, alleging jurisdiction in this court under 28 U.S.C. §§ 1291 and 1292(a) (1988), and petitions for permission to appeal under 28 U.S.C. § 1292(b). On the merits, Showa Denko does not contest the district court's authority to establish the plaintiffs' expense fund and to require fixed contributions by plaintiffs in actions before the court. It does, however, contend that paragraphs 3, 4 and 5 of the order exceed the district court's authority because they (1) will impair Showa Denko's ability to settle cases with state court plaintiffs; (2) may prevent Showa Denko from providing state court plaintiffs' discovery

in state proceedings; (3) may prevent Showa Denko from complying with state court orders; (4) will conflict with judgments rendered against Showa Denko in state courts; and (5) will interfere with Showa Denko's ability to keep settlements confidential.

The plaintiffs' steering committee contests our jurisdiction, principally on the ground that Order No. 7 is merely an interlocutory order concerning pretrial matters left to the district court's discretion. Substantively, it argues that the district court's power under Fed.R.Civ.P. 26(f) to allocate expenses incurred for discovery allows the court to ensure that the steering committee's expenses in conducting discovery be shared by all plaintiffs because all benefit from the steering committee's work. Furthermore, the district court's power under Rule 26 over discovery materials used in the MDL proceedings, the committee asserts, enables the court to reach plaintiffs not in the MDL proceedings who use the materials.

## I

■ Generally we are reluctant to review any administrative order entered early in litigation for fear of interfering with the district court's appropriate discretion and supervision in pretrial matters. *Cf. In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir.1988) (refusing to issue writ of mandamus in part because "[d]ecisions regarding the scope of discovery, the allocation of expenses, the most appropriate areas for enforced economy, and the protections to be afforded parties in the discovery process, are ordinarily left to the informed judgment of the district judge"). Moreover, interlocutory review implicates the strong policy against piecemeal appellate review.

Nevertheless, the peculiar circumstances of Order No. 7 entered in this case justify its immediate review. A serious question is raised about the power of a district court overseeing multi-district litigation to enter an order reaching nonparties and affecting state court proceedings. Moreover, the impact of Order No. 7 is magnified because of its purported applicability to hundreds of litigants and claimants. The district court recognized the order's significance by including a certification for review under 28 U.S.C. § 1292(b). A ruling on these important issues now will, in our judgment, advance the ultimate disposition of the litigation, and therefore we permit the appeal under § 1292(b). Review is also justified under 28 U.S.C. § 1292(a) to the extent that the order enjoins Showa Denko to certify compliance with its terms when participating in settlements and paying judgments entered in other proceedings beyond the scope of the multi-district litigation.

## II

■ We recognize that a district court needs to have broad discretion in coordinating and administering multi-district litigation. *See In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1019 (1st Cir.1988). The multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency. *See, e.g., Manual for Complex Litigation (Second)* §§ 33.22, 33.25 (1985) (suggesting mechanisms to organize counsel and discovery in mass tort litigation). The ultimate goal is that the district court to which pretrial proceedings in multi-district litigation have been transferred "promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407(a) (1988).

■ The authority for consolidating cases on the order of the judicial panel on multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred. While § 1407 provides a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court. As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties

to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power. *See Hartland v. Alaska Airlines,* 544 F.2d 992, 1002 (9th Cir.1976) (ordering a district court overseeing MDL proceedings to return contributions obtained from non-party claimants as a condition of approving settlements).

Paragraphs 2 and 3 of Order No. 7 require plaintiff's counsel to contribute $1,000 and 0.5% of the value of settlement or verdict "in all cases presently filed or later filed in these proceedings." While these paragraphs apparently limit their scope to parties to the litigation before the court, paragraph 4 applies the obligations of paragraphs 2 and 3 "to actions venued in state courts, untransferred federal cases, and unfiled claims in which any MDL defendant is a party or payor." The order thus compels contributions from plaintiffs in state or federal litigation who are not before the court and by claimants who have chosen not to litigate but to compromise their claims outside of the court. Contrary to the suggestion of the plaintiffs' steering committee, this impermissible reach of paragraph 4 is not mitigated by the opportunity under paragraph 5 to obtain a waiver of assessments by petitioning the district court. To take advantage of this opportunity, the claimant is compelled to file a petition in the district court, yet the court has no jurisdiction to compel such a procedure in the first instance. Claimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process. The district court simply has no power to extend the obligations of its order to them.

Paragraph 5 indirectly reaches the same result achieved directly by paragraph 4. Indeed, it is an enforcing provision for paragraph 4. Paragraph 5 requires Showa Denko to "certify" that the assessments have been paid "[a]t the close of any case by settlement, verdict or otherwise." It also forbids any party to "furnish to any non-MDL plaintiff any product of the MDL

discovery or permit its use" until the assessments have been paid. Paragraph 5 thus effectively orders Showa Denko to exact the assessments if it wishes to settle, pay a verdict or even share its discovery materials which may be considered the "product of the MDL discovery" with any plaintiff or claimant not before the court. In addition to suffering the same overreaching defect as does paragraph 4, paragraph 5 has the very real potential of interfering with discovery proceedings in state court, raising questions of conflict with the policy of comity between federal and state courts underlying *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). *Cf. Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 13–14, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987) (holding that the principles of federalism enumerated in *Younger* preclude federal court from enjoining the enforcement of a state court judgment pending the disposition of state appeals).

For these reasons, we conclude that paragraphs 4 and 5 of the district court's Order No. 7 are improperly broad and must be stricken.

### III

Apart from paragraphs 4 and 5, Showa Denko also contends that the obligation in paragraph 3 to pay an assessment proportional to the value of any settlement must also be stricken. It argues that public assessments based on a proportional formula reveal the amount of the settlement, which might otherwise be subject to an agreement of confidentiality, and that such a provision unduly intrudes on the rights of the parties to settle and to keep settlements confidential.

Because no circumstance to demonstrate Showa Denko's argument has arisen or is imminent, the presentation of this issue at this time is most probably premature. Indeed, counsel for plaintiffs have advised the court that confidentiality agreements are the subject of other orders in this case and that further discussion of modifications is not precluded in the regular and ongoing meetings between the steering

committee and the district court. More importantly, however, Showa Denko's concern that paragraph 3 may impinge on the confidentiality of settlements applies only to settlements in cases properly before the district court. Review of the district court's handling of the issue of confidentiality would be precisely the type of micromanagement that must be avoided on an interlocutory basis if the appropriate roles of appellate and trial courts are to be recognized.

Accordingly, we decline to assert ourselves at this time in this ongoing administrative issue which is well within the jurisdiction and discretion of the district court.

## IV

For the reasons given above, we grant the petition for interlocutory review; grant the petition for expedited appeal, to the extent that we have heard this case, and now decide it, reversing the entry of paragraphs 4 and 5 of Order No. 7; refuse at this time to review paragraph 3 of Order No. 7; and remand this case for further proceedings.

It is so ordered.