**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 25-1139**

―――――――――

In re: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION.

------------------------------

DONALD BOUVET; DOROTHY BOWMAN; DORIS BOX; GEORGIA BROWN; WALTER BROWN; SCOTT CHAMPEAU; CAROL SPIKER; ROBERT DERSHAM; CATHERINE DRYE; EARL KLINKER; DEBORAH KOSTEK; TIMTHOY LEONARD; CATHY LOUCKS; PHILLIP MAROTTE; DAVID MARTIN; RYAN MATTHEWS; KAREN MCKINNEY; ERNEST MOORER; MEGAN O'BRIEN; ZOHE QUINTERO; CLEVELAND ROSS; DARRELL STEWART; KRESTICE STEWART; LINDSAY URENA-TIO; WILLIAM VONZEHLE; PAULINE WIKKERNICK; SY YOST; MARK ZAZA,

Plaintiffs – Appellees,

v.

ILLINOIS UNION INSURANCE COMPANY,

Defendant – Appellant,

and

AGC CHEMICALS AMERICAS INC.; AMEREX CORPORATION; ARKEMA INC.; ARCHROMA US INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT; CHEMDESIGN PRODUCTS INC.; CHEMGUARD INC.; CLARIANT CORPORATION; CORTEVA INC.; DEEPWATER CHEMICALS INC.; DUPONT DE NEMOURS INC.; DYNAX CORPORATION; E. I. DUPONT DE NEMOURS; NATION FORD CHEMICAL COMPANY; CHEMOURS COMPANY; CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS LP; ACE AMERICAN INSURANCE COMPANY; ACE PROPERTY AND CASUALTY INSURANCE COMPANY; AETNA CASUALTY & SURETY COMPANY; AFFILIATED FM INSURANCE COMPANY; GREAT

AMERICAN ASSURANCE COMPANY, f/k/a Agricultural Insurance Company; AIG SPECIALTY INSURANCE COMPANY, f/k/a Chartis; AIG SPECIALTY INSURANCE GROUP, f/k/a Chartis Select Insurance; ALLIANZ GLOBAL RISKS US INSURANCE CO.; ALLIED WORLD NATIONAL ASSURANCE COMPANY; ALTERRA AMERICA INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY, Berkshire Hathaway Direct Insurance Company, formerly known as American Centennial Insurance Company (BHDIC), incorrectly sued herein as American Centennial Insurance Company; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; AMERICAN RE-INSURANCE COMPANY; AMERICAN ZURICH INSURANCE COMPANY; ARCH INSURANCE COMPANY; ASPEN AMERICAN INSURANCE CO.; BERKLEY NATIONAL INSURANCE COMPANY; CITY INSURANCE COMPANY; COLONY INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY; ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY; ENDURANCE RISK SOLUTIONS ASSURANCE CO.; EXECUTIVE RISK INDEMNITY, INCORPORATED, f/k/a American Excess; FEDERAL INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; GIBRALTAR INSURANCE COMPANY; GOODRICH & WATSON INSURERS, INC., f/k/a INSCO; GRANITE STATE INSURANCE COMPANY; GREAT AMERICAN E&S INSURANCE COMPANY; GREAT AMERICAN SPIRIT INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; INTERSTATE FIRE AND CASUALTY COMPANY; IRONSHORE SPECIALTY INSURANCE COMPANY, f/k/a Tig; LEXINGTON INSURANCE COMPANY; LIBERTY INSURANCE UNDERWRITERS, INCORPORATED; LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY SURPLUS INSURANCE CORPORATION; LUMBERMENS MUTUAL CASUALTY COMPANY; NATIONAL FIRE & MARINE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; NEW ENGLAND INSURANCE COMPANY; NEW HAMPSHIRE INSURANCE COMPANY; NORTH AMERICAN CAPACITY INSURANCE COMPANY; OAKWOOD INSURANCE COMPANY; OHIO CASUALTY INSURANCE COMPANY; OLD REPUBLIC RISK MANAGEMENT, INC.; RSUI INDEMNITY COMPANY; STARR INDEMNITY & LIABILITY COMPANY; THE HOME INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; WESTCHESTER SURPLUS LINES INSURANCE COMPANY; XL INSURANCE AMERICA, INCORPORATED; CHEMICALS INC.; EIDP, INC., f/k/a E. I. DuPont De Nemours & Company,

Defendants.

2

---

**No. 25-1143**

---

In re:    AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY
LITIGATION.

------------------------------

CITY OF WAUSAU,

>    Plaintiff – Appellee,

>    v.

ILLINOIS UNION INSURANCE COMPANY,

>    Defendant – Appellant,

>    and

AGC CHEMICALS AMERICAS INC.; AMEREX CORPORATION; ARKEMA
INC.; ARCHROMA US INC.; BASF CORPORATION, Individually and as
successor in interest to Ciba Inc.; BUCKEYE FIRE EQUIPMENT; CHEMDESIGN
PRODUCTS INC.; CHEMGUARD INC.; CLARIANT CORPORATION,
Individually and as successor in interest to Sandoz Chemical Corporation;
DEEPWATER CHEMICALS INC.; DYNAX CORPORATION; NATION FORD
CHEMICAL COMPANY; TYCO FIRE PRODUCTS LP, Individually and as
successor in interest to The Ansul Company; ACE AMERICAN INSURANCE
COMPANY; ACE PROPERTY AND CASUALTY INSURANCE COMPANY;
AETNA CASUALTY & SURETY COMPANY; AFFILIATED FM INSURANCE
COMPANY; GREAT AMERICAN ASSURANCE COMPANY, f/k/a Agricultural
Insurance Company; AIG SPECIALTY INSURANCE COMPANY, d/b/a Chartis
Specialty Insurance Company; AIG SPECIALTY INSURANCE GROUP;
ALLIANZ GLOBAL RISKS US INSURANCE CO.; ALLIED WORLD
NATIONAL ASSURANCE COMPANY; ALTERRA AMERICA INSURANCE
COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY, Berkshire
Hathaway Direct Insurance Company, formerly known as American Centennial
Insurance Company (BHDIC), incorrectly sued herein as American Centennial
Insurance Company; AMERICAN GUARANTEE AND LIABILITY
INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY;
AMERICAN RE-INSURANCE COMPANY; AMERICAN ZURICH

3

INSURANCE COMPANY; ARCH INSURANCE COMPANY; ASPEN AMERICAN INSURANCE CO.; BERKLEY NATIONAL INSURANCE COMPANY; CITY INSURANCE COMPANY; COLONY INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY; ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY; ENDURANCE RISK SOLUTIONS ASSURANCE CO.; EXECUTIVE RISK INDEMNITY, INCORPORATED, f/k/a American Excess Insurance Company; FEDERAL INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; GIBRALTAR INSURANCE COMPANY; GOODRICH & WATSON INSURERS, INC., f/k/a Insco Insurance Group; GRANITE STATE INSURANCE COMPANY; GREAT AMERICAN E&S INSURANCE COMPANY; GREAT AMERICAN SPIRIT INSURANCE COMPANY; HARBOR INSURANCE, The Continental Insurance Company, as successor to certain rights and liabilities under policies issued by Harbor Insurance Company, incorrectly sued herein as Harbor Insurance Company; INSURANCE COMPANY OF NORTH AMERICA; INTERSTATE FIRE AND CASUALTY COMPANY; IRONSHORE SPECIALTY INSURANCE COMPANY, f/k/a TIG Specialty Insurance Company; LEXINGTON INSURANCE COMPANY; LIBERTY INSURANCE UNDERWRITERS, INCORPORATED; LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY SURPLUS INSURANCE CORPORATION; LUMBERMENS MUTUAL CASUALTY COMPANY; NATIONAL FIRE & MARINE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; NEW ENGLAND INSURANCE COMPANY; NEW HAMPSHIRE INSURANCE COMPANY; NORTH AMERICAN CAPACITY INSURANCE COMPANY; OAKWOOD INSURANCE COMPANY; OHIO CASUALTY INSURANCE COMPANY; OLD REPUBLIC RISK MANAGEMENT, INC.; RSUI INDEMNITY COMPANY; STARR INDEMNITY & LIABILITY COMPANY; THE HOME INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; WESTCHESTER SURPLUS LINES INSURANCE COMPANY; XL INSURANCE AMERICA, INCORPORATED; JOHN DOES 1-20; THE TRAVELERS INDEMNITY COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a The Aetna Casualty and Surety Company,

Defendants.

———————————

Appeals from the United States District Court for the District of South Carolina, at Charleston. Richard Mark Gergel, District Judge. (2:18-mn-2873-RMG; 2:24-cv-03439-RMG; )

4

———————————

Argued:  December 11, 2025                                      Decided:  March 4, 2026

———————————

Before GREGORY, QUATTLEBAUM, and BERNER, Circuit Judges.

———————————

Vacated and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Gregory and Judge Berner joined.

———————————

**ARGUED:** Anton Metlitsky, O'MELVENY & MYERS LLP, New York, New York, for Appellant. Andrew William Croner, NAPOLI SHKOLNIK PLLC, New York, New York, for Appellees. **ON BRIEF:** Robert F. Walsh, Lyndon K. Groff, WHITE & WILLIAMS, LLP, Philadelphia, Pennsylvania; Kevin K. Bell, ROBINSON GRAY STEPP & LAFFITTE, LLC, Columbia, South Carolina; Jonathan D. Hacker, Joshua Revesz, O'MELVENY & MYERS LLP, Washington, District of Columbia; Jason M. Zarrow, O'MELVENY & MYERS LLP, Los Angeles, California, for Appellant.

———————————

QUATTLEBAUM, Circuit Judge:

This appeal involves the tension between the discretion afforded a district court to manage multi-district litigation and the commands of the Federal Arbitration Act. While a district court rightly has broad discretion in administering its MDL docket, it cannot do so in a way that prevents a party from asserting its rights under the FAA. Under the FAA, if a lawsuit involves an arbitrable issue, a party has a right to a stay of the lawsuit pending arbitration. Illinois Union Insurance Company sought to assert that right in this case. But the district court prevented it from doing so by denying it leave of court to file a stay motion. So, we vacate the district court's denial of leave and remand for the district court to consider the merits of Illinois Union's stay motion.

## I.

Illinois Union is a defendant in two cases in multi-district litigation regarding alleged injuries caused by aqueous film-forming foam products designed and manufactured by its insured. *See Bouvet v. 3M Co.*, No. 2:24-cv-3439-RMG (D.S.C. docketed Jan. 19, 2024); *City of Wausau v. AGC Chems. Ams., Inc.*, No. 2:24-cv-4284-RMG (D.S.C. docketed Mar. 19, 2024).* The plaintiffs filed these cases in Wisconsin state court. They alleged that Illinois Union issued excess liability policies to BASF Corporation and that BASF in turn "designed, manufactured, marketed, distributed, and/or sold" components of

---

*Aqueous film-forming foams are "use[d] to fight liquid-based fires (those started by oil, gasoline, or other flammable liquids)." *Aqueous film-forming foam (AFFF)*, STATE OF WASH. DEP'T OF ECOLOGY, https://ecology.wa.gov/waste-toxics/reducing-toxic-chemicals/addressing-priority-toxic-chemicals/pfas/afff [https://perma.cc/WS6V-X7YD] (last visited Jan. 12, 2026).

aqueous film-forming foam products. J.A. 834, 987. The plaintiffs alleged that Illinois Union was directly liable for BASF's tortious conduct under Wisconsin Statutes Section 632.24.

After the defendants removed the cases to federal court, they were consolidated in the District of South Carolina under the MDL statute, 28 U.S.C. § 1407. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391 (J.P.M.L. 2018). The district court administering the MDL entered multiple case management orders governing pretrial proceedings. One CMO requires that "[a]ny motion that is not signed by [lead counsel] must (i) contain an affirmation by movant's counsel that, prior to filing [the] motion, he/she conferred with [lead counsel] about the filing of the motion, and (ii) state whether [lead counsel] consents to the filing of the motion." J.A. 724. Another says that any motion not signed by lead counsel must be preceded by "a motion for leave of the [c]ourt to file the motion, setting forth the reasons such a motion is necessary at that time and obtaining from the [c]ourt permission to file the motion." *Id.* at 726. So, if Illinois Union wanted to file a motion over defendants' lead counsel's objection, Illinois Union first had to file a motion for leave that stated lead counsel's opposition.

Illinois Union moved for leave to file a motion to stay *Bouvet* and *City of Wausau* against it pending arbitration. It argued that its policies with BASF contained "valid arbitration agreements" and that the plaintiffs were "improperly prosecuting claims . . . under the Illinois Union policies . . . without initiating arbitration." *Id.* at 1135. And Illinois Union said it hadn't sought lead counsel's position on its motion in part because lead counsel "serve[d] as leadership for manufacturer defendants, including

7

BASF, which is directly adverse to Illinois Union with respect to coverage under the Illinois Union policies." *Id.* at 1136. The plaintiffs opposed the motion on three grounds: (1) Illinois Union violated the CMOs by failing to consult with lead counsel; (2) considering the stay motion would "disrupt the orderly proceeding of the MDL" since "individual motions affecting only a single defendant are not appropriate for immediate motion practice," *Id.* at 1257, 1260; and (3) the plaintiffs might not be bound by the arbitration clauses in Illinois Union's contracts with BASF. In its reply, Illinois Union said that after filing its motion for leave, it reached out to lead counsel, who "declined to provide the requested consent." *Id.* at 1267.

The district court denied Illinois Union's motion for leave. It first said that Illinois Union had violated a CMO by failing to consult with lead counsel before filing the motion and deemed this "a basis to deny [Illinois Union's] motion for leave to file" a stay motion. *Id.* at 1275. But it seemed to acknowledge that Illinois Union had cured that issue by "attach[ing] correspondence" with lead counsel to its reply in which "Illinois Union requested the consent of [lead counsel] to file its proposed motion to stay" and lead counsel "did not consent to the filing of Illinois Union's motion." *Id.* The district court then identified another reason for denying leave:

> There are several thousand member cases in this MDL. In each of those cases, the parties are engaging in litigation through the auspices of Court-appointed lead counsel and subject to the protocols agreed to by lead counsel and ordered by the Court. Those protocols include, among other things, [bringing] a motion under the authority of lead counsel. Adhering to the protocols is necessary to ensure that these centralized proceedings are efficient and consistent—qualities that benefit all parties in the MDL and that the transferee Court is required to promote. 28 U.S.C. § 1407. Allowing any Defendant in this MDL to conduct motion practice outside the auspices of

8

Lead Counsel would derail the centralized proceeding contemplated by § 1407 and impede each party's opportunity to participate in an organized and efficient resolution.

*Id.* Because lead counsel did not consent, the district court denied Illinois Union's motion. Illinois Union timely appealed the denial.

## II.

Before reaching the merits of the appeal, we address two preliminary issues.

## A.

First, we must assess our appellate jurisdiction. The denial of a motion for leave to file isn't a final decision. *See United States v. Myers*, 593 F.3d 338, 345 (4th Cir. 2010) ("Generally, a final decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). So, we don't have jurisdiction under 28 U.S.C. § 1291. Nor is the denial of leave among the limited set of interlocutory orders over which 28 U.S.C. § 1292 gives us jurisdiction.

But § 1291 and § 1292 aren't our only sources of appellate jurisdiction. Under 9 U.S.C. § 16(a)(1)(A), we also have appellate jurisdiction over "an order . . . refusing a stay of any action" under 9 U.S.C. § 3—that is, an order refusing a stay pending arbitration. Appellate courts usually invoke § 16(a)(1)(A) to review the denial of a § 3 stay motion. *See Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) (noting that § 16(a)(1)(A) "authorizes an appeal from a district court's denial of a petition to stay an action pending arbitration under § 3"). Illinois Union isn't appealing the denial of a § 3 motion—rather, it's appealing the denial of leave to file a § 3 motion. Even so,

§ 16(a)(1)(A) covers any "order . . . refusing a stay" under § 3. And that is what happened here. The district court denied Illinois Union leave to file a § 3 stay motion because defendants' lead counsel in the MDL had not consented. This prevented Illinois Union from moving for, and thus from obtaining, a stay. So, the district court refused Illinois Union a stay, even if it didn't explicitly say so. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1292–93 (10th Cir. 2015) (observing that appellate jurisdiction under § 16(a)(1)(A) "is not limited to a particular form of request").

An example outside the law illustrates our point. Imagine a parent who says to his child, "I made pot roast, so don't even think about asking me for Burger King tonight!" That parent has refused his child Burger King just as much as a parent who hears out his child's request for Burger King and says no.

To be clear, not all denials of leave to file a § 3 motion are immediately reviewable. For example, if the district court had denied leave because Illinois Union made a curable procedural error, like failing to request a pre-motion conference, the district court's denial of leave wouldn't have amounted to a refusal of a stay and § 16(a)(1)(A) wouldn't apply. But when the district court denied Illinois Union leave to file a stay motion because lead counsel wouldn't consent, there was nothing left for Illinois Union to do. So, in this context, the district court's denial of leave is a refusal of a stay and is thus reviewable under § 16(a)(1)(A).

## B.

Second, our standard of review. We review a district court's docket-management decisions for abuse of discretion. *Turner v. United States*, 736 F.3d 274, 283 (4th Cir.

10

2013). That includes the denial of leave to file a motion. *See Frieders' Est. v. C.I.R.*, 687 F.2d 224, 228 (7th Cir. 1982) ("We must decide whether the Tax Court abused its discretion in denying the estate leave to file its motion."). Despite that, Illinois Union says that, because the district court effectively denied a stay, we should apply de novo review. *See Rowland v. Sandy Morris Fin. & Est. Plan. Servs.*, 993 F.3d 253, 257 (4th Cir. 2021) (reviewing the denial of a stay pending arbitration de novo). But it does not matter whether we review the district court's order for abuse of discretion or de novo because Illinois Union's argument on appeal is that the district court committed a legal error by preventing it from filing a stay motion. And "an error of law by a district court is by definition an abuse of discretion." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002). So, under either standard of review, we have the same job—determining whether, as a matter of law, the district court could deny a leave motion for failure to obtain lead counsel's consent.

## C.

With those issues behind us, we turn to the merits of Illinois Union's appeal. The FAA "manifest[s] a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It provides that "on application of one of the parties" to stay a lawsuit pending arbitration,

> the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

11

9 U.S.C. § 3. In other words, "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration," the district court must grant the stay. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). Had the district court allowed Illinois Union to file its stay motion and found that the plaintiffs' claims against Illinois Union were arbitrable, the district court would have had no choice but to grant the motion.

The plaintiffs don't dispute this. Instead, they argue that the district court denied Illinois Union's leave motion because it failed to confer with lead counsel, as the CMOs required, and that a district court can permissibly deny leave on that basis. If that were all the district court did, the plaintiffs might have had a point; "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). A conferral requirement falls within that authority. And requiring Illinois Union's attorneys to contact lead counsel before filing a motion doesn't contradict 9 U.S.C. § 3 any more than the garden-variety procedural requirements district courts regularly impose, like page limits or electronic filing.

But the last two paragraphs of the district court's order recognized that Illinois Union eventually conferred with lead counsel; the district court nonetheless denied leave because lead counsel didn't provide its "authority." J.A. 1275. In that part of the order, the district court made clear it wasn't denying Illinois Union's motion based on the CMO's requirement that Illinois Union confer with lead counsel; instead, it was requiring that

12

Illinois Union obtain lead counsel's consent, which lead counsel had already denied. The effect of this order was that Illinois Union couldn't file its stay motion.

"Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation . . . or a failure to comply with sanctions imposed for such conduct . . . a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." *Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210, 215 (2d Cir. 2024) (alterations in original) (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987)). *Lau* demonstrates this principle. There, the Second Circuit acknowledged that a district court could "require a conference prior to the filing of motions as a means of managing litigation assigned to [it]." *Lau*, 825 F.2d at 652. But it held that the district court could not "refus[e] to permit a motion to be filed without a prior conference," then "fail[] to hold such a conference until nearly five months after one was first requested" and then deny the motion "for having been filed too late." *Id.* The same principle applies to a motion authorized by Congress in the FAA. And here, as in *Lau*, the district court did more than enforce a procedural rule as a prerequisite to filing a motion; it barred a party from making a motion. That was a step too far. *See Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) (noting that a district court's "inherent authority to manage [its] docket[] . . . cannot trump a statutory mandate, like Section 3 of the FAA, that clearly removes such discretion" (citations omitted)). Perhaps the district court did not intend for its order to go that far. But as written, conditioning Illinois Union's ability to a file a § 3 motion on the consent of lead counsel, that order neutered the mandatory provisions of the FAA.

We appreciate the "unique challenges" that come with "administrating a multidistrict case." *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 178 (3d Cir. 2021). The district court's inherent authority to manage its docket, especially under these circumstances, is strong. *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992) ("We recognize that a district court needs to have broad discretion in coordinating and administering multi-district litigation."). For that reason, it may well be that certain motions should be heard at a different time in an MDL than in a traditional case. But "the fact that a proceeding occurred in a[n] MDL setting does not alter the substantive rights of the litigants." *Hamer*, 994 F.3d at 177 (internal quotation marks and citation omitted). And a court's obligation to grant a meritorious stay motion under 9 U.S.C. § 3 is absolute. A district court cannot avoid that obligation by preventing the filing of that motion in the first place.

## III.

We leave the merits of Illinois Union's proposed stay motion to the district court. On remand, the district court should allow Illinois Union to file that motion. If the district court is "satisfied that the issue involved . . . is referable to arbitration" under Illinois Union's arbitration agreement with BASF, it must grant the motion. 9 U.S.C. § 3. We vacate the district court's order denying Illinois Union leave of court to file its stay motion, and we remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

14